HERMAN L. KAHN, PLAINTIFF-RESPONDENT, v. METRO-
POLITAN LIFE INSURANCE COMPANY, A NEW YORK
CORPORATION, DEFENDANT-APPELLANT.

Argued January 16, 1945—Decided February 28, 1945.

Before Justices PARKER and COLIE.

For the appellant, *McCarter, English & Egner* (*Verling C. Enteman,* of counsel).

For the respondent, *Bernard W. Schnur.*

The opinion of the court was delivered by

COLIE, J.  Metropolitan Life Insurance Company appeals from a judgment of $345 and costs entered against it and in favor of Herman L. Kahn in the First District Court of the City of Newark.  The case was tried before the court and a jury.

On February 2d, 1942, the company issued a policy of insurance in the sum of $312 on the life of Pauline Kahn. Herman L. Kahn was named as beneficiary therein.  On January 12th, 1943, the insured died, proof of death was filed with the company and a demand made for the amount of the policy which the company refused to pay.  The plaintiff, as beneficiary under the policy, then instituted suit alleging the aforementioned facts.  The company filed a specification of defenses in which it set forth the policy provision, reading: "if within two years prior to the date of issue of this Policy, the Insured has received institutional, hospital, medical, or surgical treatment or attention, and the Insured or any claimant under the Policy fails to show that the condition occasioning such treatment or attention was not of a serious nature or was not material to the risk, this Policy shall be voidable by the Company either before or after any claim, unless

reference to such institutional, hospital, medical, or surgical treatment or attention is endorsed on this Policy by the company; provided, however, that this Policy shall not be voidable because of absence of endorsement referring to any information which was disclosed in a written application for this Policy.

"If this Policy is voided by the Company, the Company will return the premiums paid."

In the specification of defenses, the company asserted that "within two years prior to the date of issue of the policy, the insured received medical treatment or attention and reference to such medical treatment or attention is not endorsed on the policy and the defendant (the insurance company) has declared the policy void and herewith tenders return of the premiums paid, such treatment not having been disclosed."

The evidence adduced at the trial disclosed that the insured, Pauline Kahn, had, during the period from January, 1940, to January, 1942, submitted herself to the ministrations of one Edward Ponger, the holder of a license to carry on "the practice of chiropractic" in the State of New Jersey. The symptoms for which he treated her were "shortness of breath, obesity, tiredness, menopause and various minor ailments such as colds and things of that sort." The treatments or adjustments, as they were called by Dr. Ponger, numbered in excess of 100 and continued to within one month of the insured's death. On the last date that a treatment or adjustment was rendered, the symptoms of shortness of breath, tiredness and obesity were present. There was also testimony offered by defendant and admitted without objection on behalf of the plaintiff, that the conditions for which the insured received treatment from Dr. Ponger were for a serious condition or ailment.

At the close of the defendant's case, the trial court denied a motion on behalf of the defendant company for the direction of a verdict in its favor and submitted the case to the jury on a charge in which he said, *inter alia,* "There is no proof of any medical treatment of this woman at any time." The trial court left for the jury to decide the single question of whether the treatments or adjustments were "surgical" within the meaning of that word as used in the policy. Excep-

tions were noted to the refusal to direct a verdict and to that portion of the court's charge quoted above.

The question here for decision is whether treatments or adjustments by a chiropractor performed by him within the orbit of a license to practice chiropractic are "medical or surgical treatment or attention" as used in a policy of life insurance. The word "medical" means "of, pertaining to, or dealing with, the healing art, or the science of medicine; especially in the narrower sense; as, medical profession; medical services; medical jurisprudence;" and the word "medicine" is defined as "the science and art dealing with the prevention, cure, or alleviation of disease; in a narrower sense, that part of the science and art of restoring and preserving health which is the province of the physician as distinguished from the surgeon and obstetrician." *Webster's New International Dictionary*. In administering the adjustments to Pauline Kahn, Dr. Ponger held himself out as attempting to prevent, cure or alleviate the conditions of which his patient suffered. This is borne out by *Exhibit D-2* introduced at the trial, which lists some 151 ailments that it is alleged readily respond to chiropractic adjustments. The nature of the enumerated ailments range from "abscesses" to "wounds that won't heal," and include several of the symptoms of which Pauline Kahn complained.

The legislative history in connection with the practice of chiropractic is illuminating. By chapter 4 of the laws of 1920 the legislature enacted a statute entitled "An act to regulate the practice of chiropractic." The following year that act was repealed and the legislature enacted a supplement to "An act to regulate the practice of medicine and surgery, to license physicians and surgeons, and to punish persons violating the provisions thereof." Cf. chapter 136 of the laws of 1921. Through the Revision of 1937 and as recently as laws of 1939, chapter 115, the subject of chiropractic has been dealt with by the legislature under the general heading of "An act to regulate the practice of medicine and surgery, &c." The effect of chapter 136 of the laws of 1921 and the subsequent acts amendatory thereof and supplemental thereto, was to grant to chiropractors a limited license to practice medicine. In *State Board of Medical Examiners*

v. *Maza,* 9 *N. J. Mis. R.* 171, the Supreme Court said: "The precise question therefore is whether chiropractic is a branch of medicine or surgery. Evidently the legislature elected so to regard it, when after passing the 'Act to regulate the practice of chiropractic,' chapter 4 of the laws of 1920, it repealed it the following year by chapter 136 of the laws of 1921 (*Pamph. L., p.* 268), and provided for 'limited licenses' under the Medicine and Surgery Act * * *. We consider that it was entirely within the power of the legislature to label chiropractic as a branch of medicine or surgery." There have been a number of cases of which *State Board, &c.,* v. *Maza, supra; Heintze* v. *New Jersey, &c., Medical Examiners,* 107 *N. J. L.* 420; *affirmed,* 110 *Id.* 24; *Miller* v. *State Board of Medical Examiners,* 11 *N. J. Mis. R.* 653, are typical, which deal with the convictions of chiropractors for indulging in the practice of medicine. A close scrutiny of those cases will, we believe, in each instance disclose that the convictions are based upon the performance of acts by the chiropractors which went beyond the scope of the limited license that was issued to them, or with the practice of chiropractic by unlicensed persons. We find nothing in that line of cases incompatible with a holding that a chiropractor practicing *within* the limits of his license is engaged in the practice of medicine. It is our view that the court below took too narrow a view of the word "medical" as used in the policy under consideration. In view of the legislative action referred to above, it seems indisputable that the adjective "medical" is used in the broad generic sense comprehended by the definition given above and is inclusive of the practice of chiropractic.

The undisputed evidence disclosing the treatments within the two year period and reference to such treatments not having been endorsed upon the policy as required, or disclosed in the application, it was the duty of the trial court to grant the motion for a directed verdict in favor of the defendant. *Winter* v. *Metropolitan Life Insurance Co.,* 129 *N. J. L.* 187.

For the reasons stated above, the judgment under appeal is reversed and judgment is entered in favor of the defendant, Metropolitan Life Insurance company, and against the plaintiff, Herman L. Kahn, with costs.