The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Douglas J. TERRY,
Defendant-Appellant.

No. 84SA380.

Supreme Court of Colorado,
En Banc.

June 2, 1986.
Rehearing Denied June 23, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Martin, Knapple, Humphrey & Tharp, Joel C. Maguire, Donald J. Humphrey, Boulder, for defendant-appellant.

ROVIRA, Justice.

Douglas J. Terry, the defendant, was convicted in the Boulder County District Court of second-degree sexual assault. He appeals his conviction asserting that the statute under which he was convicted, section 18–3–403(1)(h), 8 C.R.S. (1978), is unconstitutional.[1] He also contends that the trial court erred in denying his request to present surrebuttal evidence. We uphold the constitutionality of the statute but reverse and remand for a new trial because the defendant should have been allowed to present surrebuttal evidence. Because we order a new trial, we deem it unnecessary to decide the other issues raised by the defendant.

## I.

Defendant was charged with second-degree sexual assault as a result of a criminal complaint filed by J.G. She alleged that the defendant, a licensed, practicing chiropractor in Boulder, Colorado, sexually assaulted her while conducting a vaginal examination. The assault allegedly occurred on January 20, 1982, in a treatment room in the defendant's chiropractic offices in Boulder. In a trial to the court, J.G. claimed, in essence, that the defendant stimulated her clitoris under the guise of performing a cursory examination for a vaginal infection. She also testified that while the defendant was stimulating her clitoris, he in-

serted his fingers into her vagina. The defendant admitted that he had performed a cursory visual examination on J.G. but denied stimulating her clitoris or placing his fingers in her vagina. No one else was in the room during the examination.

## II.

Defendant contends that section 18–3–403(1)(h), 8 C.R.S. (1978), is unconstitutionally vague and overbroad. That section provides:

**Sexual Assault in the Second Degree.** (1) Any actor who knowingly inflicts sexual penetration or sexual intrusion on a victim commits sexual assault in the second degree if:

. . . .

(h) The actor engages in treatment or examination of a victim for other than bona fide medical purposes or in a manner substantially inconsistent with reasonable medical practices.

At the trial court, the defendant moved to dismiss the charge of second-degree sexual assault on the ground, *inter alia*, that the phrase "bona fide medical purposes" is unconstitutionally vague. The trial court denied this part of the defendant's motion.[2]

In evaluating defendant's vagueness challenge, we bear in mind that a statute is presumed to be constitutional and the burden is on the party attacking the statute to establish its unconstitutionality beyond a reasonable doubt. *People v. Gross*, 670 P.2d 799 (Colo.1983); *People v. Phillips*, 652 P.2d 575 (Colo.1982). In order to withstand a vagueness challenge, a statute should be sufficiently specific to inform a person of common intelligence of the standards of conduct imposed and to give fair warning of the acts which are prohibited. *Gross*, 670 P.2d at 800–01; *People v. Castro*, 657 P.2d 932, 939 (Colo.1983). A criminal statute is not unconstitutional because

---

**1.** This appeal was filed directly in this court pursuant to § 13–4–102(1)(b), 6 C.R.S. (1973) (constitutionality of a statute in question).

**2.** The trial court ruled that the section of the statute proscribing treatment or examination

"in a manner substantially inconsistent with reasonable medical practices" is unconstitutionally vague. The correctness of this ruling has not been raised on appeal, and, accordingly, we do not address it.

it fails to define every word or act that constitutes an element of the offense. *Gross*, 670 P.2d at 800. We realize that while a statute should be sufficiently specific to give fair warning of the proscribed conduct, it should also be sufficiently general "to address the essential problem under varied circumstances and during changing times." *Castro*, 657 P.2d at 939. Finally, the harsh remedy of voiding a statute should be employed only where the statute provides no discernible standards at all for defining proscribed conduct. *People v. Smith*, 638 P.2d 1, 6 (Colo.1981); *People v. Garcia*, 189 Colo. 347, 350, 541 P.2d 687, 689 (1975).

■ In claiming that the phrase "bona fide medical purposes" is unconstitutionally vague, the defendant correctly asserts that the terms "bona fide" and "medical purpose" are not defined in the criminal code. However, failure by the legislature to define these terms is by no means fatal to the validity of the statute. We have often stated that the legislature is not constitutionally required to specifically define the readily comprehensible and every day terms used in statutes. Further, we have often referred to dictionaries and to the case law to determine the probable legislative intent in using a particular word. *People v. Blue*, 190 Colo. 95, 100–01, 544 P.2d 385, 388–89 (1975).

*Black's Law Dictionary* (5th ed. 1979), defines "bona fide" as follows: "In or with good faith; honestly, openly, and sincerely; without deceit or fraud. Truly; actually; without simulation or pretense. Innocently; in the attitude of trust and confidence; without notice of fraud, etc. Real, actual, genuine, and not feigned." *Id.* at 160 (citations omitted); *cf. People v. Pal*, 56 A.D.2d 640, 391 N.Y.S.2d 702, 703 (1977) ("In the context of the physician-patient relationship, 'good faith' means 'for a bona fide medical purpose.'").

The term "medical" is defined by *Black's* as follows: "Pertaining, relating, or belonging to the study and practice of medicine, or the science and art of the investigation, prevention, cure, and alleviation of disease." *Id.* at 885. Courts have also broadly defined the term "medical." For example, in *Newhook v. Blum*, 72 A.D.2d 567, 421 N.Y.S.2d 11, 12 (1979), the court held that since the applicable statute permitted a transportation allowance for "medical care," petitioner was entitled to a transportation allowance for his expenses in getting to and from a rehabilitation center. In *Kahn v. Metropolitan Life Insurance Co.*, 132 N.J.L. 503, 41 A.2d 329 (1945), the Supreme Court of New Jersey held that chiropractic treatments or adjustments constituted "medical or surgical treatment or attention" as that term was used in a life insurance policy. The court further stated that "[t]he word 'medical' means 'of, pertaining to, or dealing with, the healing art, or the science of medicine; especially in the narrower sense; as, medical profession; medical services; medical jurisprudence'; ...." 41 A.2d at 331. In *Zeh v. National Hospital Association*, 233 Or. 221, 377 P.2d 852, 857 (1963), the Supreme Court of Oregon held that chiropractic services consisting of heat treatment, massage, and adjustment constituted "medical care" within the purview of a medical insurance policy.

Finally, *Black's* defines the term "purpose" as follows: "That which one sets before him to accomplish; an end, intention, or aim, object, plan, project." *Id.* at 1112.

■ Based on the foregoing definitions, we hold that for purposes of applying section 18–3–403(1)(h), sexual penetration or intrusion made during treatment or examination is for other than "bona fide medical purposes" when it is not taken in good faith, honestly, and sincerely in the course of investigating, preventing, alleviating, or curing a disease or malady. Hence, section 18–3–403(1)(h) is not void for vagueness. The phrase "bona fide medical purposes" provides a sufficiently clear and practical guide for law-abiding behavior for a person of ordinary intelligence.

■ Relying on specific language found in *Colorado Chiropractic Association v.*

*State,* 171 Colo. 395, 467 P.2d 795 (1970), defendant next argues that, by definition, a chiropractor never treats or examines for "medical purposes" and therefore he should not have been convicted under section 18–3–403(1)(h). We disagree.

In *Colorado Chiropractic,* the Colorado Chiropractic Association challenged, on equal protection and due process grounds, the constitutionality of a statute which required the coroner to be notified of any death occurring "without medical attendance." § 66–8–7, 4 C.R.S. (1963). The Department of Health had construed the statute to mean that, where a person dies while under the care of a chiropractor, it is a "death occurring without medical attendance." 171 Colo. at 397, 467 P.2d at 796. This construction had the effect of prohibiting a chiropractor from signing a death certificate. In construing the phrase "without medical attendance," the court looked to the statutory chapters dealing with the healing arts and focused on the term "practice of medicine" because it was the "closest term to 'medical attendance' to be found in the chapters relating to the healing arts." 171 Colo. at 399, 467 P.2d at 797. The court placed particular emphasis on a statutory provision which required that a "physician or official" sign the death certificate. After examining statutes relating to "practice of medicine," the court concluded that "the term 'physician' relates solely to doctors of medicine and doctors of osteopathy." 171 Colo. at 401, 467 P.2d at 799 (citing *State v. Fahey,* 152 Minn. 220, 188 N.W. 260 (1922)). In short, the court refused to include chiropractors within the definition of "physician" and thereby denied chiropractors the authority to sign death certificates. Here, however, we are concerned with the term "medical purposes." Merely because one is not a "physician" does not preclude that person from engaging in "medical purposes."

Section 12–33–102(1), 5 C.R.S. (1985), supports the proposition that chiropractors engage in "medical" activities. That section provides, in pertinent part:

**12–33–102. Definitions.** As used in this article [chiropractors], unless the context otherwise requires:

(1) "Chiropractic" means that branch of the healing arts which is based on the premise that disease is attributable to the abnormal functioning of the human nervous system. *It includes the diagnosing and analyzing of human ailments* and seeks the elimination of the abnormal functioning of the human nervous system by the adjustment or manipulation, by hand, of the articulations and adjacent tissue of the human body, particularly the spinal column, and the usage as indicated of procedures which facilitate and make the adjustment or manipulation more effective, and the use of sanitary, hygienic, nutritional, and physical remedial measures necessary to such practice. (emphasis added).

We believe this statute authorizes chiropractors to engage in certain medical activities. Accordingly, we hold that the term "medical purposes," as used in section 18–3–403(1)(h), encompasses the practice of chiropractic. This holding is consistent with our belief that in enacting section 18–3–403(1)(h) the legislature intended to prevent those persons in a position of trust by dint of their professional status from taking sexual advantage of their patients. We reject the defendant's claim of unconstitutional vagueness.

■ Defendant also baldly asserts that section 18–3–403(1)(h) is overbroad. The argument is without merit. "A statute is impermissibly overbroad if 'in its reach it prohibits constitutionally protected conduct.'" *People v. Enea,* 665 P.2d 1026, 1027 (Colo.1983) (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). Defendant, however, has failed to identify any constitutionally protected activity upon which the statute in question allegedly infringes. Defendant was convicted for committing a sexual intrusion during the course of an examination on a patient for other than bona fide medical purposes. Such conduct is not constitutionally protected and, thus, defendant's overbreadth argument fails.

### III.

Defendant next argues that the trial court erred in denying his request to present surrebuttal testimony. We agree.

On direct examination, defendant testified that J.G.'s legs were approximately six inches apart at the knees during his cursory visual examination. Later that day, the People, on rebuttal, called Betty Peterson, a registered nurse and volunteer for the Boulder Rape Crisis Team. Over the defendant's objection she testified that she had performed an examination on J.G. with J.G.'s knees six inches apart. Peterson concluded, in essence, that with the knees six inches apart it is impossible to make the necessary observations for determining whether vaginal infection is present. The examination by Peterson took place during a recess after the defendant had testified and was conducted ex parte and without notice to defense counsel.[3]

On the day following Peterson's testimony, defense counsel asked the trial court to require J.G. to submit to another examination of the same type and style as that conducted by Peterson. The examination was to be performed by an expert witness for the defendant, Dr. Klepper, who would then testify on surrebuttal concerning the examination. The trial court denied the defendant's request. Defendant now argues that, had his witness been allowed to conduct a similar examination on J.G., he would have been able to challenge Peterson's methodology and observations, and provide the court with an independent evaluation of Peterson's testimony.

The question before us, therefore, is whether the trial court erred in denying the defendant surrebuttal testimony.

It is well settled that trial courts should permit defendants to introduce evidence on surrebuttal that tends to meet new matter presented by the prosecution on rebuttal.

*People v. Brockman*, 699 P.2d 1339, 1342 (Colo.1985); *People v. Martinez*, 181 Colo. 27, 28–29, 506 P.2d 744, 745 (1973). Here, there is no doubt that the People presented new matter on rebuttal. The new matter consisted of testimony of a registered nurse who had performed, ex parte and without notice to defense counsel, an examination of the complaining witness. The district attorney and Peterson characterized the examination as a "reconstruction" or "reenactment" of the events as testified to by the defendant. The purpose of the rebuttal testimony was to impeach the credibility of the defendant by implying that he could not have properly performed the examination with J.G.'s knees only six inches apart. Defense counsel accordingly attempted to refute the rebuttal testimony by reenacting Peterson's examination with his own witness. By so doing, defense counsel hoped to contradict the findings of Peterson and thereby rehabilitate the defendant.

While we appreciate the reluctance of the trial court to subject the complainant to another examination, we believe that the trial court erred in denying the defendant the opportunity to rebut Peterson's testimony. The defendant in his case in chief could not have presented or opposed the new matter injected into the trial by Peterson. "[F]airness requires that the defendant be permitted to oppose new matters presented by plaintiff for the first time which the defendant could not have presented or opposed at the time of the presentation of his main case." *People v. White*, 14 Ill.App.3d 1079, 303 N.E.2d 36, 37 (1973) (citing *Ross v. Danter Associates, Inc.*, 102 Ill.App.2d 354, 242 N.E.2d 330 (1968)). Under the facts presented here, the defendant had a right to respond to Peterson's testimony with testimony contradicting the conclusions drawn by Peter-

---

**3.** The defendant also argues that the prosecutor violated Crim.P. 16, part I(a)(1)(IV) (now (a)(1)(III)), which requires the prosecutor to disclose to defense counsel "any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, ex- periments, or comparisons." Defendant also points out that Crim.P. 16, Part III(b), places parties under a continuing duty to disclose "additional material or information which is subject to disclosure." Because we reverse the trial court for failure to allow surrebuttal, we deem it unnecessary to decide the Crim.P. 16 issue.

son concerning the defendant's examination. *See People v. Hutto,* 181 Colo. 279, 282, 509 P.2d 298, 300 (1973); *Barry v. People,* 29 Colo. 395, 399, 68 P. 274, 275 (1902); *see also Haley v. Oaks Apartments, Ltd.,* 173 Ga.App. 44, 325 S.E.2d 602, 605 (1984) ("The trial court erred in refusing to permit appellants to sur-rebut the specific testimony of a surprise rebuttal witness who had 'sneaked onto appellant's property and performed a purported termite inspection' during trial and testified that he found very little termite damage at the time of trial.").

In sum, we hold that, because the defendant was denied his right to refute new matter presented in rebuttal, he is entitled to a new trial.

## IV.

■ As a final matter we address, in our supervisory capacity, defendant's argument that the prosecutor knowingly failed to disclose false testimony of the complaining witness.

On the first day of trial J.G. testified that she initially reported the alleged assault in a telephone call placed from her home telephone to her sister in California in the early hours of January 22, 1982—two days after the alleged assault. Some six months after the trial had ended, J.G. was deposed in connection with a civil suit she had filed against the defendant in connection with the same assault. During questioning at the deposition, J.G. admitted that she did not call her sister from her home as she had testified; rather, she stated that she called her sister from work on her employer's WATS line. She further stated at the deposition that she had lied at trial because she was afraid she "would get in trouble" if she admitted using her employer's WATS line. Most important, J.G. stated that she told the prosecutor about her false testimony as she left the courtroom on the day of her testimony. Upon learning of these facts, defendant filed a motion for new trial based on newly discovered evidence.

At the hearing on defendant's motion for new trial, it was stipulated that J.G. had testified falsely and that the prosecutor knew about the false testimony yet failed to disclose it to either the court or defense counsel. The trial court denied the motion for new trial, reasoning: "The Court is persuaded beyond any reasonable doubt that [J.G.] was credible and not mistaken as to the crucial facts. . . . My decision would not have been affected in any way had I known that she . . . changed her testimony and said she made the phone call from another telephone."

Without deciding whether the prosecutor's failure to disclose constituted reversible error, we find it necessary to expressly disapprove of the prosecutor's conduct. The record plainly demonstrates that J.G. testified falsely, that she told the prosecutor about her false testimony, and that the prosecutor did not timely inform the court or defense counsel of the false testimony. *See Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959) (conviction obtained through use of false testimony violates due process where prosecutor, while not soliciting the testimony, allows it to go uncorrected when it appears). As the prosecutor herself recognized in her opening statement, the case essentially amounted to a "swearing match" between the defendant and J.G. The credibility of J.G. was of utmost importance to the People's case. Anything that would weaken J.G.'s testimony would necessarily strengthen Terry's defense.

We believe the prosecutor's failure to disclose the false testimony violated the American Bar Association's *Standards for Criminal Justice* §§ 3–3.11 and 3–5.6 (2d ed. 1982). These sections provide:

> Standard 3–3.11. Disclosure of Evidence by the Prosecutor.
>
> (a) It is unprofessional conduct for a prosecutor intentionally to fail to make disclosure to the defense, at the earliest feasible opportunity, of the existence of evidence which tends to negate the guilt of the accused as to the of-

fense charged or which would tend to reduce the punishment of the accused. Standard 3–5.6. Presentation of Evidence.

(a) It is unprofessional conduct for a prosecutor knowingly to offer false evidence, whether by documents, tangible evidence, or the testimony of witnesses, or fail to seek withdrawal thereof upon discovery of its falsity.

The nondisclosure also violated the "basic principle of discovery in criminal proceedings in Colorado that 'the prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor.'" *People v. Millitello*, 705 P.2d 514, 518 (Colo.1985) (quoting Crim.P. 16, part I(a)(3)).[4]

In sum, while we deem it unnecessary to determine whether the prosecutor's nondisclosure amounted to constitutional or reversible error, we expressly disapprove of her conduct.

For the reasons expressed in Part III above, we reverse and remand this case to the district court for a new trial.

VOLLACK, J., concurs in part and dissents in part.

ERICKSON, J., joins in the concurrence and dissent.

VOLLACK, Justice, concurring in part and dissenting in part:

I agree with Part II of the majority opinion, which upholds the constitutionality of section 18–3–403(1)(h), 8 C.R.S. (1978).

I respectfully dissent from Part III of the majority opinion which reverses the ruling of the trial court denying the defendant's motion to introduce surrebuttal evidence and remands for a new trial.

I agree with that portion of Part IV of the majority opinion which disapproves of the prosecutor's knowing failure to disclose false testimony of the complaining witness. However, while I concur in result, I believe the majority should have addressed the issue of whether the prosecutor's failure to disclose constituted reversible error. I believe it did not.

The majority opinion correctly states that generally the defendant should be permitted to introduce surrebuttal evidence which tends to meet *new* matter introduced by the prosecution on rebuttal. *People v. Brockman*, 699 P.2d 1339, 1342 (Colo. 1985): *People v. Martinez*, 181 Colo. 27, 28–29, 506 P.2d 744, 745 (1973). If the surrebuttal evidence does not meet new matter introduced by the prosecution on rebuttal, it is within the discretion of the trial court to allow or deny surrebuttal. *Id.* I respectfully disagree with the majority's statement that, "[h]ere, there is no doubt that the People presented new matter on rebuttal."

On cross-examination of the defendant, the prosecution asked the defendant what procedure was used to conduct "quick, look-see cursory examinations of the vagina." The defendant replied that there was no specific textbook procedure for cursory, visual inspections. The prosecution then asked the defendant to explain his procedure. The defendant replied that the patient was on her back and that her legs were maybe three or four or five or six inches apart between the knees. The rebuttal testimony of the registered nurse, who had performed an examination of the complaining witness, was to impeach the defendant's statement by showing that a cursory, visual inspection of the complaining witness' vagina could not have been performed with her legs as close together as six inches between the knees. The testimony of the registered nurse did not constitute new matter.

The defendant's claim that the prosecutor violated Crim.P. 16(I)(a)(1)(IV) (now (I)(a)(1)(III)), and Crim.P. 16 (III)(b), is with-

---

**4.** Crim.P. 16 has been amended since the time of trial. What was Crim.P. 16, part I(a)(3) is now found under part I(a)(2).

out merit. The rule requires the prosecutor to disclose to defense counsel,

> any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons.

Crim.P. 16(III)(b) places parties under a continuing duty to disclose "additional material or information which is subject to disclosure." I do not believe Crim.P. 16 applies to the rebuttal evidence at issue. Prior to the time the defendant testified that he performed the cursory gynecological examination with the complaining witness' legs apart by only six inches between the knees, there was no reason to believe the prosecution planned to introduce rebuttal testimony. Moreover, the examination of the complaining witness by the registered nurse did not take place until after the testimony of the defendant. *People v. Vollentine*, 643 P.2d 800 (Colo.App.1982) (prosecution's duty to disclose the identity of its rebuttal witnesses is inapplicable where rebuttal testimony is not introduced to refute a defense, but is introduced solely to impeach the credibility of a defense witness). Here, the evidence was introduced to impeach the credibility of the defendant as to the scope of his cursory, vaginal examination. Under these circumstances, I do not believe Crim.P. 16 applies.

I agree with the majority's discussion in Part IV of the improper conduct on the part of the prosecutor in knowingly failing to disclose false testimony of the complaining witness. However, I disagree with the majority's decision not to decide whether the prosecutor's failure to disclose constituted reversible error. I believe it did not.

The defendant waived a jury trial and the case was tried to the court. The record reveals the victim testified she initially reported the alleged· assault during a telephone call placed from her home to her sister in California in the early hours of January 22, 1982, two days after the alleged assault. This testimony was consistent with information she provided in her affidavit in support of the defendant's arrest warrant.

Six months after the trial ended, the victim was deposed in connection with a civil suit she filed against the defendant, and testified she did not call her sister from her home but called from her employer's business, using his WATS line. She had informed the prosecutor of this discrepancy in her testimony on the same day after she testified in the criminal proceedings. After being told, the prosecutor did not divulge to the defense or to the court that the victim had testified falsely as to where she had made the call.

At the hearing on the defendant's motion for new trial, it was stipulated that the facts, as stated above, were true. Following argument, the trial court denied the motion for new trial. Relying on *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the trial court, which sat as trier of fact, found that the false testimony would not have affected the judgment of the court in finding the defendant guilty.

A significant factor was the trial court's dual role as trier of fact and law. Another factor of significance was the nature of the false testimony and its effect on the trier of fact had the trier known of its falsehood at trial.

The majority opinion cites *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (involving a trial by jury in which false testimony went to a deal struck between the witness and the prosecution). Here, the case was tried to the court. In addition, the prosecution's improper conduct was more egregious in *Napue* because the prosecutor knew the testimony was false the moment it was elicited. Here, it was not until after the witness stepped down from the witness stand that the prosecution learned of the falsehood.

More significantly, the effect of the false testimony on the trier of fact was inconsequential. It concerned where the call originated; not whether the call was made and

did not relate to the truth of the matter discussed over the telephone. The trial court clearly stated that the false testimony was error but that it was harmless beyond a reasonable doubt. The court found the victim to be credible as to the substantive issues.

Constitutional error is committed if the undisclosed evidence creates a reasonable doubt of guilt that did not otherwise exist. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1975). The court found that, beyond a reasonable doubt, the false testimony would not have affected the outcome and that the defendant received a fair trial. While the prosecutor's failure to disclose the false testimony once she learned of it was a gross mistake in judgment, the non-disclosure was not sufficiently material to deny the defendant's right to a fair trial. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1975); *Graham v. People,* 705 P.2d 505, 509 (Colo.1985) ("reversal is required unless the court is convinced that the error was harmless beyond a reasonable doubt"). The error in judgment on behalf of the prosecutor was harmless and would not substantially affect the rights of the defendant to have a fair trial.

The remaining issues raised by the defendant on appeal are without merit, and I would affirm the trial court.

I am authorized to state that Justice ERICKSON joins in this special concurrence and dissent.