24CA0588 Peo v Flores 09-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0588
Larimer County District Court No. 15CR1412
Honorable Dinsmore Tuttle, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Andres M. Flores,

Defendant-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE J. JONES
Kuhn and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 4, 2025

---

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant
Attorney General and Assistant Solicitor General, Denver, Colorado, for
Plaintiff-Appellee

Dolan + Zimmerman LLP, Sydney Dolan, Jennifer R. Zimmerman, Boulder,
Colorado, for Defendant-Appellant

¶ 1    Defendant, Andres M. Flores, appeals the postconviction court's order denying his Crim. P. 35(c) motion after an evidentiary hearing. We affirm.

## I.    Background

¶ 2    The People charged Flores with second degree kidnapping, menacing, third degree assault, and sexual assault based on a slew of violent acts he committed against his ex-girlfriend, L.A. According to the People, Flores had choked L.A., held a knife to her throat, sexually assaulted her, threatened to kill her with a fork, and forced her into his car, which L.A. later jumped out of in an attempt to escape.

¶ 3    A jury found Flores guilty as charged. The trial court sentenced him to an indefinite term of forty-two years to life in the custody of the Department of Corrections.

¶ 4    A division of this court affirmed Flores's convictions on direct appeal in *People v. Flores*, (Colo. App. No. 17CA1597, June 13, 2019) (not published pursuant to C.A.R. 35(e)).

¶ 5    Through counsel, Flores filed a Crim. P. 35(c) motion for postconviction relief, asserting, among other claims, that the prosecutor violated his right to due process by knowingly

presenting false testimony at trial and that his trial counsel provided ineffective assistance in numerous ways. After holding an evidentiary hearing on Flores's claims, the postconviction court denied the motion.

## II.   Discussion

¶ 6     Flores appeals the postconviction court's denial of his due process claim and several of his ineffective assistance of trial counsel claims. We address each claim in turn.

### A.   Standard of Review

¶ 7     In reviewing the denial of a Rule 35(c) motion after an evidentiary hearing, we review the postconviction court's conclusions of law de novo but defer to the court's findings of fact if the evidence supports them. *People v. Villanueva*, 2016 COA 70, ¶ 28. We may affirm the postconviction court's denial of a Rule 35(c) motion on any ground supported by the record, even if the postconviction court didn't consider or contemplate that ground. *People v. Hamm*, 2019 COA 90, ¶ 23.

### B.   Due Process Claim

¶ 8     Flores asserted a claim that the prosecutor knowingly presented false testimony at trial regarding his and L.A.'s

2

relationship status, thereby violating his right to due process. Treating it as an ineffective assistance of counsel claim, the postconviction court rejected it. We conclude that the claim fails even if treated as a due process claim.

¶ 9     In his Rule 35(c) motion, Flores asserted that (1) he and L.A. were married when the charged offenses occurred and that they remain married; (2) throughout the police investigation and when L.A. testified at trial, she "consistently falsely described their relationship as simply a 'relationship' or as a 'dating' relationship"; (3) the prosecutor knew that L.A.'s description was false because documents in discovery showed L.A. as a dependent on Flores's health insurance, and only domestic partners and spouses qualify as dependents as adults, *see* § 10-16-102(17), C.R.S. 2025; and (4) the prosecutor's failure to correct L.A.'s trial testimony about the status of her and Flores's relationship violated Flores's right to due process.

¶ 10    Whether Flores and L.A. were married was disputed at the Rule 35(c) hearing. Flores testified that he and L.A. had signed a declaration of common law marriage, and postconviction counsel introduced into evidence the declaration, health insurance

documents showing that L.A. used Flores's last name, and several text messages L.A. had sent to Flores discussing the possibility of divorce. But Flores also testified that during the police investigation he had used the words "girlfriend" and "dating" to describe his and L.A.'s relationship, he and L.A. had signed the declaration of common law marriage only to secure health insurance coverage for L.A., and he didn't tell the police that they were married because "[i]t just wasn't a thing that we did. Whenever I introduced her, I never introduced her as my wife, and when she introduced me, she never introduced me as [her] husband." L.A. testified that she didn't remember using Flores's last name on health insurance documents or in everyday life and that she didn't hold herself out to be Flores's wife.

¶ 11 In its order denying Flores's Rule 35(c) motion, the postconviction court — characterizing Flores's due process claim as an ineffective assistance of trial counsel claim — concluded that counsel didn't provide ineffective assistance by choosing not to confront L.A. about the nature of her relationship with Flores because there was little, if any, evidence that Flores and L.A. held

4

themselves out to be married or referred to themselves as husband and wife.

¶ 12    Flores contends that the postconviction court failed to rule on his due process claim because the court mischaracterized it as an ineffective assistance claim.  But the claim fails as a due process claim for two reasons.

¶ 13    First, Rule 35(c)(3)(VII) provides that "[t]he court shall deny any claim that could have been presented in an appeal previously brought."  While there are exceptions to this rule for certain claims, including claims "based on events that occurred after initiation of the defendant's prior appeal" and claims "based on evidence that could not have been discovered previously through the exercise of due diligence," Crim. P. 35(c)(3)(VII)(a)-(b), none apply in this case.  Indeed, the essence of Flores's due process claim is that the prosecutor knew *at the time of trial* that L.A.'s description of her and Flores's relationship as a "dating" relationship was false because documents in discovery indicated that they were married.  And all the evidence relevant to this claim was presented at trial.  Thus, Flores could have raised this argument on direct appeal, and because he didn't, Rule 35(c)(3)(VII) bars this claim.

¶ 14    In any event, the claim also fails as a due process claim because the record doesn't support Flores's assertion that the prosecutor knowingly presented false testimony — let alone that the testimony was material, *see People v. Medina*, 260 P.3d 42, 48 (Colo. App. 2010).  Whether Flores and L.A. were married was disputed at trial and at the postconviction hearing, and, as the postconviction court found, little, if any, evidence supports the notion that Flores and L.A. held themselves out to be married or referred to themselves as husband and wife.  Indeed, as noted above, there was evidence that they weren't married.  Consequently, on this record, it can't be said that the prosecutor knew or should have known that L.A.'s trial testimony was false.  It follows that there was no due process violation.

¶ 15    *People v. Terry*, 720 P.2d 125 (Colo. 1986), *DeLuzio v. People*, 494 P.2d 589 (Colo. 1972), and *Napue v. Illinois*, 360 U.S. 264 (1959), on which Flores relies, don't warrant a contrary conclusion. In each of those three cases, the prosecutor had offered perjured testimony at trial, and the record plainly demonstrated that the testimony was false and that the prosecutor had known as much and failed to disclose it to defense counsel or the court.  *See Terry*,

720 P.2d at 130-31; *DeLuzio*, 494 P.2d at 592; *Napue*, 360 U.S. at 269. In this case, however, the record doesn't plainly demonstrate that the prosecutor knowingly presented false testimony. To the contrary, based on the evidence admitted, the prosecutor had wide latitude to reasonably infer that L.A. and Flores weren't married. *See People v. Herald*, 2024 COA 53, ¶¶ 82-85 (prosecutor did not intentionally misstate the evidence by arguing a reasonable inference from a witness's vague testimony).

## C. Ineffective Assistance of Trial Counsel Claims

¶ 16 Flores claims that his trial counsel provided ineffective assistance by (1) failing to investigate Flores's neighbors; (2) failing to challenge L.A.'s trial testimony that Flores had previously attempted suicide; (3) mishandling CRE 404(b) evidence of Flores's previous assault on his ex-wife; and (4) failing to interview certain witnesses counsel had endorsed before trial. He also claims that his counsel's errors cumulatively deprived him of his right to effective assistance of counsel. We reject each of Flores's claims.

¶ 17 To prevail on an ineffective assistance of counsel claim, a defendant must prove by a preponderance of the evidence that (1) his counsel's performance was deficient and (2) the deficient

performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984); *Dunlap v. People*, 173 P.3d 1054, 1061-62 (Colo. 2007). As for the performance prong, a defendant must show that his counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. As for the prejudice prong, a defendant must show a reasonable probability that, but for the deficient performance, "the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 18    A court may deny an ineffective assistance claim on either prong of the *Strickland* test without addressing the other. *People v. Gandiaga*, 70 P.3d 523, 526 (Colo. App. 2002).

### 1.    Flores's Neighbors

¶ 19    Flores contends that his counsel provided ineffective assistance by failing to investigate Flores's neighbors, Mr. and Mrs. Bayless. We disagree.

¶ 20    The Baylesses lived in the apartment directly above Flores's when the incident giving rise to the charged offenses occurred. The prosecution filed a pretrial notice endorsing them as witnesses, but they were never called to testify during trial.

¶ 21    Flores's Rule 35(c) motion alleged as follows: when the police had interviewed the Baylesses, they said they hadn't heard screaming on the night in question and that, if they had, they would have called the police; when a post-trial investigator interviewed Mr. Bayless, he said he recalled seeing Flores and L.A. during the night when he awoke and looked outside his window, and they didn't appear to be fighting; and if trial counsel had interviewed Mr. Bayless and called him to testify during Flores's trial, his testimony would have created reasonable doubt regarding L.A.'s account of what occurred inside Flores's apartment, which would have significantly undermined L.A.'s credibility and resulted in an acquittal on some or all of the charges.

¶ 22    During the Rule 35(c) hearing, trial counsel testified that he vaguely remembered reviewing the police report of the Baylesses' interviews in discovery, he didn't recall whether he or his pretrial investigator had interviewed the Baylesses, and he vaguely remembered that they didn't want to be involved in the case.

¶ 23    The post-trial investigator also testified during the hearing. When postconviction counsel asked the investigator to testify about

what Mr. Bayless had said in his post-trial interview, however, the postconviction court sustained the prosecutor's hearsay objection.

¶ 24 In its order denying Flores's Rule 35(c) motion, the postconviction court rejected Flores's claim that trial counsel provided ineffective assistance by failing to investigate the Baylesses. It reasoned that "evidence from other sources corroborate [L.A.]'s claims about a physical altercation, whereby the value of any supportive evidence from the Baylesses is only speculative," and that "Flores did not present evidence from the Baylesses at the [Rule] 35(c) hearing from which this court might conclude that failure to interview them rises to the level of ineffective assistance of counsel."

¶ 25 Flores asks us to reverse and remand for a new hearing "due to the arbitrary and inequitable way that the postconviction court conducted the [Rule] 35(c) hearing." He specifically takes issue with the court's exclusion of the post-trial investigator's testimony about what Mr. Bayless said in his interview. Flores asserts that the testimony wasn't hearsay because postconviction counsel sought to admit Mr. Bayless's statements not to prove the truth of the matter

asserted, but to establish what Mr. Bayless likely would have said if trial counsel had called him to testify. *See* CRE 801(c).

¶ 26    In Rule 35(c) hearings, however, "courts have broad discretion to control the 'mode and extent of the presentation of evidence.'" *People v. Finney*, 2012 COA 38, ¶ 64 (quoting *People v. Cole*, 654 P.2d 830, 832 (Colo. 1982)), *aff'd*, 2014 CO 38. We conclude that the postconviction court acted within that broad discretion by precluding the investigator's testimony, as it was reasonable for the court to conclude that Mr. Bayless's statements would not have been relevant at Flores's trial unless they were offered for their truth. *See* CRE 802.

¶ 27    But even if the postconviction court should have allowed the investigator to testify about what Mr. Bayless said in his interview, Flores's claim doesn't satisfy either prong of the *Strickland* test. For one, his assertion that trial counsel failed to interview the Baylesses misrepresents the record: at the hearing, trial counsel testified that he didn't recall whether he or his pretrial investigator had interviewed the Baylesses and that he vaguely remembered them not wanting to be involved. Likewise, the record doesn't support Flores's assertion that Mr. Bayless's testimony would have been

11

"wholly inconsistent" with L.A.'s account of what occurred inside Flores's apartment: Mr. Bayless merely said that he didn't hear screaming and that when he looked outside his window and saw Flores and L.A., they didn't appear to be fighting. And to the extent the jury could have found Mr. Bayless's statements at odds with L.A.'s, there isn't a reasonable probability that his testimony would have affected the outcome of the case. As the postconviction court found, the prosecution presented substantial other evidence at trial corroborating L.A.'s testimony that she and Flores fought inside his apartment. That evidence included pictures of broken blinds in the bedroom, knives and forks strewn about the kitchen floor, and L.A.'s blood smears on the apartment door and carport post. *See Strickland*, 466 U.S. at 695-96.

## 2. Flores's Suicide Attempt

¶ 28 Flores next contends that his counsel provided ineffective assistance by failing to challenge L.A.'s trial testimony that Flores had previously attempted suicide. Again, we disagree.

¶ 29 At trial, L.A. testified that she had jumped out of Flores's car on the night of the charged offenses not because she was suicidal but because she "believed that he was going to kill me in a field. He

12

had been telling me for a few weeks prior about a field he liked to go to to think, and it kind of clicked in my memory that he . . . maybe had already planned to take me there."  She continued,

> Several nights in a row he called and said he was going to commit suicide and — from the field and FaceTimed me.  And once I called the police, and they found him in the field.  And he told them that he wasn't doing anything and that I was crazy.
>
> And then he went home, and he would FaceTime me with a red handkerchief wrapped around his throat and told me that's how he was going to kill himself.  And I didn't really know what to do because I already called the police, and they didn't — they didn't believe me, I guess.  They believed him more than me.

Trial counsel didn't object to this testimony.

¶ 30     In his Rule 35(c) motion, Flores asserted that a post-trial investigator determined that the local police departments didn't have any record of L.A. calling 911 about Flores.  Had trial counsel requested such records, Flores asserted, counsel would have realized that L.A. never called the police and thus would have been able to impeach her trial testimony on this subject, which, in turn, would have undermined her credibility.

¶ 31     At the Rule 35(c) hearing, a criminal defense expert witness testified that the absence of these records "is some of the strongest impeachment I think I have ever seen, . . . in the sense of somebody's credibility relating to the central theme that this is why she jumped from the car."  But the records custodian for one of the local police departments testified that, although she didn't find a record of L.A. calling to report Flores missing or in need of a welfare check, she couldn't confirm that such a call never took place because the 911 call dispatch system generally retains call records for only two years.  Only calls connected to a resulting case would have records after that two-year period.

¶ 32     In its order denying Flores's Rule 35(c) motion, the court ruled that trial counsel's failure to challenge L.A.'s testimony about Flores's suicide attempt was deficient but that Flores didn't demonstrate a reasonable probability that, but for trial counsel's deficient performance, the jury would have acquitted Flores.  *See Strickland*, 466 U.S. at 694.

¶ 33     We agree with the postconviction court that Flores's claim fails under *Strickland*'s prejudice prong.

14

¶ 34    Contrary to Flores's assertion, the record doesn't establish a reasonable probability that the result at trial would have been different had trial counsel challenged L.A.'s testimony. Indeed, Flores's Rule 35(c) motion made only a conclusory assertion that trial counsel's failure to challenge L.A.'s testimony prejudiced him; the motion didn't include any explanation as to why that was so. And we don't see how it could have been, especially given that the absence of a police department's record of L.A.'s phone call doesn't necessarily mean that L.A. didn't call the police regarding Flores's suicide attempt. As the records custodian explained at the hearing, the 911 call dispatch system generally retains records for only two years, so she couldn't confirm that a call never took place. And L.A. could have contacted a different police department.

¶ 35    Accordingly, Flores can't demonstrate that trial counsel would have been able to directly impeach L.A. based on the absence of a record. While Flores points to the criminal defense expert witness's opinion to the contrary, the postconviction court wasn't required to accept the expert's opinion. *See Scott v. People*, 444 P.2d 388, 393 (Colo. 1968) (a fact finder isn't required to accept an expert witness's testimony); *Gandiaga*, 70 P.3d at 526 ("The

[postconviction] court determines the weight and credibility to be given the testimony of witnesses in a Crim. P. 35(c) hearing."); *see also Rocky Mountain Gun Owners v. Polis*, 2020 CO 66, ¶ 75 n.14 (a court does not have to accept even unrebutted expert testimony). Because Flores's claim doesn't satisfy *Strickland*'s prejudice prong, the postconviction court properly denied this claim. *See Gandiaga*, 70 P.3d at 526.

### 3. Flores's Previous Assault

¶ 36 We also reject Flores's contention that his counsel provided ineffective assistance by mishandling CRE 404(b) evidence of Flores's previous assault on his ex-wife.

¶ 37 Before trial, the prosecution notified defense counsel and the court of its intent to introduce evidence that Flores had previously assaulted his ex-wife, N.M., in view of N.M.'s neighbor, S.M. At a pretrial hearing addressing this evidence, S.M. testified that Flores had choked N.M. and held a knife to her throat, while N.M. testified that she didn't remember being choked or threatened with a knife. The trial court ruled that the evidence was admissible to prove motive and to refute the defenses of fabrication and consent. *See* CRE 404(b); § 18-6-801.5(2)-(3), C.R.S. 2025.

16

¶ 38    About a week before trial, the prosecution notified the court

that N.M. would be out of town during Flores's trial and asked for

permission to read to the jury a transcript of her testimony from the

pretrial evidentiary hearing instead.  Trial counsel expressed

concerns that allowing S.M. to testify at trial without having N.M.

available to testify "puts Mr. Flores at an extreme disadvantage" and

told the court that "if [N.M.] is unavailable, [S.M.] shouldn't be

permitted to testify" either.

¶ 39    The court ruled that if N.M. was unavailable, the prosecution

could read the transcript of N.M.'s pretrial hearing testimony to the

jury, and S.M. could testify in person at trial.  The following

exchange ensued:

> THE COURT: [Trial counsel], the People have
> suggested that they would be willing to not
> bring in [S.M.] to testify and have her
> testimony by transcript as well.
>
> [TRIAL COUNSEL]: If the Court's decision is to
> allow the testimony of [S.M.], then we would
> ask for both to be presented by transcripts
> rather than one by live testimony and the
> other by transcript.
>
> THE COURT: Okay.  All right.  [Prosecutor],
> that was your offer?
>
> [PROSECUTOR]: I did say that.  I mean —

THE COURT: I mean, technically she is not unavailable under [CRE] 804.

[PROSECUTOR]: Right.

THE COURT: But in — I think there are some extenuating circumstances in this case where the Court could make a determination that that stipulation that you offered would be an appropriate way to address the differences in the testimony.

[PROSECUTOR]: And I think this Court could. My request to the Court would be to allow for the live testimony. There is not bad faith on behalf of the People that we want a favorable witness here and we will just disregard what the unfavorable witness says. We have tried diligently to get both witnesses here. . . . I would ask for the live testimony, but understand the Court's ruling, even under a [CRE] 403 analysis [I] could see how the Court could get there.

THE COURT: Okay. I think under all of the circumstances here and given, interestingly enough, we do have the benefit of prior testimony, which we often don't have in [CRE] 404(b) cases anyway, I do think that it would be appropriate to proceed as a way of minimizing any risk of unfair prejudice to allow testimony to be presented to the jury by transcript for both of those witnesses.

¶ 40     In his postconviction motion, Flores asserted that trial counsel's "failure to have N.M. served with a subpoena, like his failure to object to the transcript-reading procedure, was

18

constitutionally ineffective" because "the outlandish and prejudicial way in which [the CRE 404(b) evidence] was admitted had the effect of lowering the prosecution's burden of proof and denying Mr. Flores's right to confront and cross-examine witnesses against him."  At the Rule 35(c) hearing, the criminal defense expert witness opined that trial counsel's performance in this regard was unreasonable.

¶ 41    In its order denying Flores's Rule 35(c) motion, the postconviction court said that trial counsel testified that his handling of the CRE 404(b) evidence was strategic.  And it noted that the issue whether the trial court plainly erred by admitting evidence of Flores's previous assault by means of N.M.'s and S.M.'s transcript testimony rather than their live testimony had been raised and rejected on direct appeal in *Flores*, No. 17CA1597, slip op. at ¶¶ 59, 68.  The postconviction court therefore concluded that trial counsel made a legitimate strategic decision to forgo these witnesses' live testimony.

¶ 42    Flores contends that the postconviction court mischaracterized the record because trial counsel didn't testify at the Rule 35(c) hearing that his handling of the CRE 404(b) evidence

19

was strategic. But even if trial counsel didn't so testify, the record supports the postconviction court's conclusion that his decision was strategic. When the prosecutor asked the court for permission to admit transcripts of N.M.'s pretrial hearing testimony based on her unavailability, trial counsel expressed concerns that allowing S.M. to testify at trial without having N.M. available to testify would put him "at an extreme disadvantage," presumably because S.M.'s testimony was more favorable to the prosecution than N.M.'s testimony. The trial court and prosecutor also acknowledged the prejudicial effect of allowing S.M. to testify at trial if N.M. couldn't. To minimize that effect, the prosecutor offered, trial counsel agreed, and the court ruled, that neither witness would testify live. As the division acknowledged in Flores's direct appeal, this shows a strategic decision. *See Flores*, No. 17CA1597, slip op. at ¶ 67 ("[Trial counsel] strategically agreed to admit [S.M.'s] testimony by transcript to avoid any extra emphasis that might result from her live testimony."). Accordingly, Flores can't demonstrate that trial counsel's handling of the CRE 404(b) evidence was deficient. *See Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003) ("Strategic choices

20

made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable . . . .").

¶ 43    Nor can Flores demonstrate prejudice. The division on direct appeal concluded that the evidence of Flores's previous assault was admissible, the trial court didn't plainly err by admitting transcripts of N.M.'s and S.M.'s pretrial hearing testimony, and trial counsel had an adequate opportunity to cross-examine N.M. and S.M. at the pretrial hearing. *Flores*, No. 17CA1597, slip op. at ¶¶ 59, 66-68; *see People v. Washington*, 2014 COA 41, ¶¶ 40-41 (no prejudice from counsel's failure to object to the admission of CRE 404(b) evidence where the appellate court held on direct appeal that the evidence was admissible). And Flores doesn't assert that N.M.'s and S.M.'s live testimony would have differed from their pretrial testimony, or that, by being able to cross-examine them at trial, trial counsel would have caused the jury to doubt whether he assaulted L.A. Accordingly, Flores can't show a reasonable possibility that, but for trial counsel's decision to forgo N.M.'s and S.M.'s live testimony, the result at trial would have been different. *See Strickland*, 466 U.S. at 694.

21

### 4. Endorsed Witnesses

¶ 44      Flores next contends that his counsel provided ineffective assistance by failing to interview five witnesses endorsed by the defense before trial.

¶ 45      We conclude that Flores abandoned this claim.

¶ 46      In his Rule 35(c) motion, Flores alleged that trial counsel had filed a pretrial notice endorsing five witnesses but didn't interview these witnesses or call them to testify during trial. "Had trial counsel contacted the witnesses that he himself endorsed," Flores alleged, "he would have discovered that they had exculpatory evidence to contribute to Mr. Flores's defense." In particular, a post-trial investigator contacted Ms. Woodson, one of the five endorsed witnesses, who said Flores is a peaceful person unlikely to commit a violent crime and recalled several instances in which L.A. was hospitalized for self-harm and suicidality.

¶ 47      At the Rule 35(c) hearing, however, postconviction counsel told the court that she needed to "essentially retract" this allegation because she "subsequently interviewed Ms. Woodson in preparation for this hearing. That is not what she said during that interview. I am not calling her as a witness at this hearing, and so I want the

Court to disregard that." *See People v. Smith*, 2024 CO 3, ¶ 17 (a party's decision not to pursue claims previously raised constitutes an abandonment of those claims).

¶ 48     Flores didn't allege in his Rule 35(c) motion that the post-trial investigator had contacted the other four witnesses trial counsel had endorsed, nor did he allege what any of them would have said had they testified.  Postconviction counsel didn't present any evidence regarding the four witnesses at the hearing, and she omitted this claim from the proposed order she submitted after the hearing.  *See People v. Geisick*, 2016 COA 113, ¶ 16 ("When a party specifically removes issues from a trial court's consideration, the party has waived those issues and we may not review them on appeal."); *cf. Smith*, ¶¶ 7, 18-20 (postconviction counsel abandoned claims asserted in pro se Rule 35(c) motion by, in part, failing to include them in the supplemental motion).

¶ 49     In any event, Flores's claim fails on its merits.  We don't know what Ms. Woodson's trial testimony would have been because, as postconviction counsel explained at the hearing, Ms. Woodson didn't say what Flores had alleged she said.  We don't know what the other four witnesses' testimony would have been either.  Absent

evidence of what these five witnesses would have said, Flores can't demonstrate a reasonable probability that trial counsel's failure to interview them prejudiced him. *See People v. Chambers*, 900 P.2d 1249, 1252 (Colo. App. 1994) (The court rejected the defendant's claim that trial counsel provided ineffective assistance by failing to investigate witnesses because the defendant "failed to produce any evidence as to who these potential witnesses might be, their willingness to testify (or their amenability to process), and the substance, credibility, or admissibility of their testimony. Without some such showing, [the] defendant cannot demonstrate that counsel's failure to investigate resulted in any prejudice to him."); *Gandiaga*, 70 P.3d at 526 (same).

5.     Cumulative Ineffective Assistance of Counsel

¶ 50     Lastly, Flores contends that his trial counsel's errors cumulatively deprived him of his right to effective assistance of counsel. Because there was only one potential instance of deficient performance — counsel's failure to challenge L.A.'s testimony about Flores's suicide attempt (as to which Flores didn't show prejudice) — we reject his claim of cumulative ineffective assistance of counsel. *See People v. Walton*, 167 P.3d 163, 169 (Colo. App. 2007)

24

(rejecting the defendant's claim of cumulative ineffective assistance because there weren't multiple incidents of deficient performance to compound); *see also Howard-Walker v. People*, 2019 CO 69, ¶ 26 ([R]eversal is warranted when numerous errors in the aggregate show the absence of a fair trial . . . .").

## III. Abandoned Claims

¶ 51    We deem abandoned the remaining Rule 35(c) claims Flores raised in his postconviction motion but has not reasserted on appeal.  *See People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007).

## IV. Disposition

¶ 52    The order is affirmed.

JUDGE KUHN and JUDGE MOULTRIE concur.