2014 COA 41

**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Kelvin A. WASHINGTON,**
**Defendant–Appellant.**

**Court of Appeals No. 12CA1223**

Colorado Court of Appeals,
Div. VI.

Announced April 10, 2014

El Paso County District Court No. 95CR2076, Honorable Leonard P. Plank, Judge.

John W. Suthers, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, for Plaintiff–Appellee

Kelvin A. Washington, Pro Se

Opinion by JUDGE GABRIEL

¶ 1 Defendant, Kelvin A. Washington, appeals the denial after a hearing of his Crim. P. 35(c) motion alleging ineffective assistance of trial counsel. We conclude that (1) the postconviction court applied the correct burden of proof on Washington's ineffective assistance claims; (2) evidence in the record amply supported the postconviction court's findings on ineffective assistance; and (3) there is no evidence in the record supporting the ineffective assistance allegations on which the district court did not make findings. Accordingly, we affirm.

## I. Background

¶ 2 The victim was shot and killed outside an auto parts store. According to eyewitness accounts, after the shooting, the shooter ran from the store to a car, and the car drove away. One witness viewed a photo lineup and identified Washington as the person who ran from the store.

¶ 3 In the course of the investigation of the shooting, an investigator interviewed J.G., another witness who had seen the car that drove away. J.G. was shown two photo lineups. He picked out of one lineup the person who was driving the car (this was not Washington). Although a photograph of Washington was included in the second lineup, J.G. was unable to make any type of identification. As part of their investigation, the police also conducted a gunshot residue test on Washington's hands.

¶ 4 Washington was subsequently charged with first degree murder. Before trial, the prosecution gave notice pursuant to CRE 404(b) of its intent to introduce certain of Washington's prior acts involving the victim. One of these acts was a 1994 incident in which Washington and his stepbrother were involved in a fight with the victim and another man. In the course of this fight, Washington allegedly pointed a gun at the man with the victim and said, "I'll kill both you motherfuckers." The second of these prior acts was a 1995 incident in which Washington allegedly drove by the victim's grandmother's house and shot at a group that included the victim, striking the victim's cousin.

¶ 5 The trial court subsequently conducted a hearing on the prosecution's request to introduce the foregoing evidence. At this hearing, defense counsel requested a continuance to investigate the 1995 incident because he had received information suggesting that Washington may have had an alibi regarding that incident. The trial court deferred ruling on the request for a continuance, pending trial counsel's preliminary investigation and a status report from him. The court, however, noted its inclination to admit the CRE 404(b) evidence at issue.

¶ 6 Approximately one month later, the court conducted another hearing and revisited the question of the CRE 404(b) evidence. At this hearing, defense counsel reported that he had no evidence to present at that time, although he reserved the right to raise

the issue of the CRE 404(b) evidence's admissibility again "if something comes up ... different than what we know now." The trial court then reaffirmed its prior view that the prior acts evidence was admissible, concluding that such evidence could be introduced to show Washington's motive or his intent to commit first degree murder.

¶ 7 The case then proceeded to a jury trial. At trial, Washington's theory of defense was one of identity. Specifically, he asserted that he was not the person who killed the victim.

¶ 8 During trial, J.G. failed to appear to testify, notwithstanding the fact that the prosecution had subpoenaed him. Defense counsel thus requested, and the court issued, a warrant for J. G.'s arrest. Counsel, however, did not request a continuance to locate J.G. Also during trial, without contemporaneous objection from defense counsel, the prosecution presented evidence of the above-described prior acts and referred to those acts during closing argument.

¶ 9 The jury subsequently convicted Washington of first degree murder.

¶ 10 Thereafter, J.G. was located, and the trial court conducted a contempt hearing relating to his failure to appear. J.G. testified at this hearing, and his testimony was consistent with his earlier statements to the police. As pertinent here, he testified that he had seen a car coming back from the auto parts store and traveling at a high rate of speed. He recognized the driver and also saw a black male in the car ducking down. He did not know who this black male was and added that he did not even see the man's face in the car.

¶ 11 On direct appeal, the division affirmed the judgment of conviction against Washington. *People v. Washington,* (Colo.App. No. 96CA0901, Jan. 28, 1999) (not published pursuant to C.A.R. 35(f)) *(Washington I ).* As pertinent here, the division analyzed the admission of the prior acts for plain error. The division concluded that although the trial court had erred in not making specific findings regarding this evidence's admissibility, reversal was not warranted because, among other things, the trial court did not abuse its discretion in admitting the evidence. In

reaching this conclusion, and notwithstanding the fact that its review was for plain error, the division performed the applicable CRE 404(b) merits analysis. *Id.* at 3–4.

¶ 12 Thereafter, Washington filed a pro se Crim. P. 35(c) motion alleging ineffective assistance of his trial counsel, and the postconviction court appointed counsel for Washington. Washington and, later, counsel then filed amended Crim. P. 35(c) motions, after which the court conducted an evidentiary hearing on Washington's ineffective assistance claims.

¶ 13 Washington and his trial counsel both testified at this hearing, and as pertinent here, Washington argued that his trial counsel was ineffective in (1) failing to present evidence of the gunshot residue test; (2) failing to request a continuance to procure J.G.'s testimony or to offer his out-of-court statements to investigators through the residual hearsay exception; (3) failing to present two particular witnesses' testimony concerning the 1994 incident; (4) failing to present evidence of an alibi to the 1995 incident; and (5) failing to object to the prior act evidence when the evidence was introduced and when the prosecution referred to that evidence in closing argument.

¶ 14 In a thorough and detailed order, the postconviction court rejected Washington's claims. The court generally credited trial counsel's testimony and found that many of the deficiencies that Washington alleged involved strategic decisions by counsel that fell within the range of professionally competent assistance. The postconviction court also found that Washington failed to show that but for counsel's alleged errors or omissions, the result of the trial would have been different, concluding that Washington's claim in this regard was unsupported by any evidence and amounted to "pure speculation."

¶ 15 Washington now appeals.

## II.  Affidavit

¶ 16 As a preliminary matter, we note that Washington attached an affidavit to his opening brief. Because our review is limited to the record on appeal, however, we will not consider this affidavit. *See Fendley v. People,* 107 P.3d 1122, 1125 (Colo.App.2004)

("We are limited to the record presented and may consider only arguments and assertions supported by the evidence in the record.").

## III. Discussion

### A. Standard of Review and Applicable Law

¶ 17 The postconviction court determines the weight and credibility to be given to the testimony of witnesses in a Crim. P. 35(c) hearing. *People v. Curren*, 228 P.3d 253, 258 (Colo.App.2009). When the evidence in the record supports the court's findings, we will not disturb those findings on review. *Id.* We, however, review the court's conclusions of law de novo. *Id.*

¶ 18 To obtain relief on an ineffective assistance of counsel claim, a defendant generally must satisfy the test adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and followed in Colorado. *See, e.g., People v. Cole*, 775 P.2d 551, 554 (Colo.1989). Under *Strickland*'s two-prong test, a defendant is required

> to demonstrate first, that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance," and second, that he suffered prejudice from his counsel's ineffectiveness, that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* (quoting *Strickland*, 466 U.S. at 690, 694, 104 S.Ct. 2052).

¶ 19 Because of the difficulties inherent in evaluating an attorney's conduct without relying on the distorting effects of hindsight, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

¶ 20 If a court determines that a defendant has failed to prove either prong of the *Strickland* analysis, it may deny an ineffective assistance claim without addressing the other prong. *See id.* at 697, 104 S.Ct. 2052.

### B. Burden of Proof

¶ 21 Washington contends that the postconviction court reversibly erred in applying the incorrect burden of proof on the prejudice prong of his ineffective assistance claim. We are not persuaded.

¶ 22 A defendant bears the burden of proving the prejudice prong of an ineffective assistance claim. *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052 ("Conflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."); *Silva v. People*, 156 P.3d 1164, 1169 (Colo.2007) ("*Strickland v. Washington* created a two-prong test for ineffective assistance of counsel claims which places the burden on the defendant to show (1) 'that counsel's performance was deficient' and (2) 'that the deficient performance prejudiced the defense.'") (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052).

¶ 23 Moreover, *Strickland* makes clear that a defendant need not prove the prejudice prong by a preponderance of the evidence: "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *see also Fisher v. Gibson*, 282 F.3d 1283, 1307 (10th Cir.2002) ("The prejudice defendant must demonstrate is by less than a preponderance of the evidence ...."); *cf. Krutsinger v. People*, 219 P.3d 1054, 1063 (Colo.2009) (stating in a different context, "It is clearly the case ... that by 'reasonable probability' we also intend something less than a preponderance of the evidence...."). Rather, as noted above, a defendant need only show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different, with "a reasonable prob-

ability" being a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

¶ 24 In this regard, we note that our supreme court has issued arguably conflicting pronouncements as to the proper burden of proof for *Strickland'*s second prong. *Compare Hagos v. People,* 2012 CO 63, ¶ 17, 288 P.3d 116, 120 ("The word 'probability' does not require a defendant to show that the deficient performance more likely than not altered the outcome of the case."), *and People v. Garcia,* 815 P.2d 937, 941 (Colo.1991) ("While this [prejudice] requirement means that the defendant must establish more than the mere possibility that counsel's errors affected the outcome of the proceeding, it does not require the defendant to prove that counsel's errors 'more likely than not altered the outcome in the case.'") (quoting *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052), *with People v. Naranjo,* 840 P.2d 319, 325 (Colo.1992) ("Under the *Strickland* standard, a defendant will establish a violation of his right to testify when he proves, by a preponderance of the evidence, the following elements: that defense counsel's action or inaction ... fell below the professional level of competence demanded of attorneys practicing in criminal law at the time of the defendant's trial ...; and that there is a reasonable probability that, but for defense counsel's deficient performance, the result of the trial would have been different.").

¶ 25 To the extent that these precedents conflict, we are bound to follow the supreme court's most recent pronouncement, which was its statement in *Hagos.* *See Justus v. State,* 2012 COA 169, ¶ 50, 337 P.3d 1219 (*cert. granted on other grounds* Aug. 5, 2013) (noting inconsistent supreme court case law and following the more recent decisions of that court); *State v. Patterson,* 321 Wis.2d 752, 776 N.W.2d 602, 607 (Wis.Ct.App.2009) (noting that to the extent decisions of the state's highest court were inconsistent, the state's intermediate appellate court was bound to follow the more recent decision), *aff'd,* 329 Wis.2d 599, 790 N.W.2d 909 (2010).

■ ¶ 26 To the extent that the foregoing precedents do not conflict, such that *Naranjo* cannot be said to have been implicitly over-

ruled by the later supreme court cases, we are nonetheless bound by decisions of the United States Supreme Court on matters of federal law. *See Murry v. GuideOne Specialty Mut. Ins. Co.,* 194 P.3d 489, 493 (Colo. App.2008). Thus, we conclude that the Supreme Court's statement in *Strickland* controls.

¶ 27 To the extent that several divisions of this court have departed from *Strickland'*s above-noted statements regarding the applicable burden of proof, *see, e.g., People v. Aguilar,* 2012 COA 181, ¶ 7, 317 P.3d 1255, 1257; *People v. Russell,* 36 P.3d 92, 95 (Colo. App.2001), we are not obligated to follow those divisions, *see People v. Smoots,* 2013 COA 152, ¶ 20, —— P.3d —— (noting that one division of the Colorado Court of Appeals is not obligated to follow the precedent established by another division, although the latter division gives the prior decisions considerable deference).

■ ¶ 28 Here, although the postconviction court initially stated that both *Strickland* prongs had to be proven by a preponderance of the evidence, the court thereafter articulated and applied the correct burden of proof, concluding that Washington failed to satisfy this burden. Specifically, the court noted that to prove prejudice under *Strickland,* a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. The court then opined:

> Under the second prong of the *Strickland* test, the Defendant has the burden of showing that trial counsel's allegedly deficient performance resulted in prejudice to him, i.e. that "but for" counsel's alleged errors or omissions, the end result of the trial would have been different. In this Court's opinion, such a claim amounts to pure speculation on the part of the Defendant. The Court has received no testimony or evidence to support this position. This Court will not set aside a conviction based upon such speculation. Therefore, this Court also finds that the Defendant has failed to sustain his burden on the second prong of the *Strickland* test.

¶ 29 Accordingly, we conclude that the postconviction court applied the correct burden of proof when analyzing the prejudice prong of Washington's ineffective assistance claim.

### C. Claims Addressed by the Postconviction Court

¶ 30 Washington contends that contrary to the postconviction court's findings, the evidence at the postconviction hearing conclusively established that his trial counsel was ineffective in failing (1) to present evidence of Washington's gunshot residue test; (2) to request a continuance to obtain J.G.'s testimony or to introduce his out-of-court statements to investigators through the residual hearsay exception; (3) to investigate and present evidence of an alibi to the 1995 incident; and (4) to object to the prior acts evidence, both when the evidence was introduced and when the prosecution referred to the evidence in closing argument. We address and reject each of these contentions in turn.

### 1. Gunshot Residue Test

¶ 31 With respect to the gunshot residue test, trial counsel testified that he assumed he considered all pertinent factors in deciding what evidence to present. He further stated, "In a case like this you put on any evidence that's helpful."

¶ 32 In addition, evidence in the record suggested that the test would not have been as helpful to Washington as he asserts. Washington's only evidence that the test came back negative appears to have been his own testimony that his counsel told him that. He did not introduce evidence of the test itself. Moreover, Washington conceded on cross-examination that when he was told by a detective that the test had come back positive, he stated that he had fired a gun earlier in the week at a firing range, thus undermining his later claim of a negative test result.

¶ 33 On these facts, we conclude that the evidence supports the postconviction court's finding that Washington failed to show how trial counsel's choice not to introduce the gunshot residue test was outside the range of professionally competent assistance. *Cf.*

*Williams v. Head,* 185 F.3d 1223, 1227–28 (11th Cir.1999) (noting that the strong presumption that counsel rendered effective assistance was particularly important when the trial had occurred ten years before trial counsel's testimony at the postconviction hearing and when counsel's recollection was severely hampered by the facts that he had turned his file over to successor counsel after the trial and the file was subsequently lost).

### 2. J.G.'s Eyewitness Account

¶ 34 With respect to trial counsel's alleged ineffectiveness in not presenting J.G.'s eyewitness account at trial, Washington's argument is premised on his assertion that J.G. had stated that Washington was not the person in the back seat of the car that drove away from the auto parts store. As noted above, however, the record shows that J.G. could *not* identify the man in the back seat of the car. It does not show that J.G. would have provided evidence that Washington was not that man.

¶ 35 In light of the foregoing, we agree with the postconviction court's conclusion that Washington failed to show that trial counsel was constitutionally ineffective in failing to request a continuance to procure J.G.'s testimony or to introduce his out-of-court statements to investigators through the residual hearsay exception. Even had J.G. testified, the record shows that his testimony would not have established that Washington was not present. Rather, it would have been cumulative of the testimony of other witnesses who were unable to identify the shooter or the person in the back of the car that left the scene of the shooting.

### 3. Alibi Evidence Concerning the 1995 Incident

¶ 36 With respect to trial counsel's alleged failure to investigate and introduce alibi evidence concerning the 1995 incident, the record shows that Washington's trial counsel and his investigator flew to Memphis to investigate the possible alibi evidence. Thereafter, counsel told the court that he had no evidence to present regarding the 1995 incident, although he reserved the right

to challenge the admissibility of the evidence concerning that incident if something came up "different than what we know now."

¶ 37 The record further shows that trial counsel testified at the postconviction hearing that although he could not recall the specifics, he presumed that he did not find a family member who could serve as an alibi witness, noting, "[I]f we had found something that would have constituted an alibi I'm sure I would have put on that evidence at trial."

¶ 38 On these facts, we conclude that the evidence amply supports the postconviction court's finding that Washington had failed to prove that his counsel's investigation and alleged failure to introduce alibi evidence concerning the 1995 incident were deficient.

### 4. Contemporaneous Objections to Prior Acts

■ ¶ 39 Washington argues that on two occasions, his trial counsel was ineffective in failing to object to the prior acts evidence at issue. The record does not support his assertions.

¶ 40 First, Washington contends that his trial counsel failed to object to the introduction of the prior acts evidence when the evidence was first presented and that had counsel objected, either the trial court would have precluded the evidence or the division on direct appeal would have reversed his conviction. Over Washington's objection, however, the trial court had already ruled that the evidence was admissible to show Washington's motive and intent. And notwithstanding Washington's assertion to the contrary, on direct appeal, the division concluded that the trial court did not abuse its discretion in doing so:

> [S]ince the evidence shows that defendant had an ongoing feud with the victim and that, therefore, he had a motive to harm the victim, it is clearly probative of a material fact in issue, i.e., whether it was defendant who killed the victim. Its logical relevance is apparent and is independent of the prohibited inference that defendant had a bad character. And, its probative value outweighed any unfair prejudice.

Thus, the trial court did not abuse its discretion in admitting the evidence.

*Washington I*, at 3–4. Thus, even had counsel contemporaneously objected, such that the division was reviewing a preserved issue for harmless error, the division's determination that the trial court did not abuse its discretion shows that the result would have been the same.

¶ 41 Accordingly, we conclude that Washington failed to demonstrate any prejudice arising from counsel's alleged failure to object to the prior acts evidence when it was offered at trial.

■ ¶ 42 Second, Washington argues that his trial counsel was ineffective in failing to object when the prosecutor referred to the prior acts evidence in closing argument. Specifically, he contends that the evidence was admitted solely to show motive and intent but that the prosecutor used it as evidence of identity. Washington asserts that counsel was ineffective in not objecting to this argument.

¶ 43 Contrary to Washington's contention, however, the record shows that the prosecutor never mentioned identity when referring to the prior acts evidence in closing argument. Even if the prosecutor's argument could be construed as relating to the issue of identity, however, the decision to object to a particular argument is often a strategic decision that would be entitled to deference. *See, e.g., People v. Dillard,* 680 P.2d 243, 246 (Colo.App.1984) (concluding that defense counsel had made a valid tactical decision not to object to portions of the prosecution's closing argument because counsel believed that the remarks did not warrant a mistrial and an objection would have emphasized the improper argument). And although Washington's trial counsel did not object to the prosecutor's closing argument, he emphasized in his own closing that the prior acts evidence could not be used as evidence of identity, which, counsel asserted, was what the case was about.

¶ 44 Accordingly, we perceive no basis to disturb the postconviction court's conclusion that trial counsel was not ineffective on the foregoing grounds.

### D. Absence of Findings on Other Claims

¶ 45 Washington next contends that the postconviction court reversibly erred in not making findings of fact and conclusions of law with respect to (1) Washington's purported claim that trial counsel was constitutionally ineffective in not having presented testimony from two particular witnesses regarding the 1994 incident, and (2) the other claims raised in Washington's pro se motions but not thereafter advanced by his appointed postconviction counsel. We are not persuaded.

#### 1. Applicable Law

¶ 46 When a court grants a hearing on a postconviction motion, the court must enter written or oral findings either granting or denying relief. Crim. P. 35(c)(3)(V). If the court properly denies a Crim. P. 35(c) motion, however, its failure to make findings of fact and to state conclusions of law is harmless. *Russell*, 36 P.3d at 94.

#### 2. Witnesses Concerning the 1994 Incident

¶ 47 With respect to the witnesses concerning the 1994 incident, at the postconviction hearing, Washington did not produce any evidence of how the proffered testimony would have helped his case, and the record shows that he could not have done so. For example, at trial, the prosecution produced evidence that in the 1994 incident, Washington's stepbrother and the victim got into a fight. The prosecution's evidence further showed that Washington interceded, pointed a gun at the person who was with the victim, and threatened to kill him and the victim. At the postconviction hearing, Washington testified that he was not involved in the fight, that he only broke it up, and that certain witnesses to the fight would have so testified. Washington did not, however, deny that he pointed a gun at the person who was with the victim or that he threatened this person and the victim.

¶ 48 Accordingly, even if the witnesses would have supported Washington's testimony, the record fails to show how counsel's not calling these witnesses was deficient or how Washington was prejudiced by the absence of their testimony.

#### 3. Claims Raised in Pro Se Motions

¶ 49 Finally, Washington asserts that the postconviction court erred in failing to address his pro se claims that his trial counsel was ineffective in (1) failing to investigate and subpoena a female occupant of the car that was at and then left the crime scene; (2) failing to impeach several prosecution witnesses with a particular witness's statement that he was pressured to lie about Washington's being the shooter; (3) failing to advise the court about a conflict of interest between and among Washington, trial counsel, and trial counsel's investigator; (4) failing to impeach a particular witness's identification testimony with his prior statement that he recognized Washington, not from the crime scene, but rather from the newspaper; (5) failing to notify the court that one of the jurors was a friend of the victim's family; and (6) failing to obtain a police report of a drive-by shooting occurring at the home of an alternative suspect, thus establishing a motive for that alternative suspect.

¶ 50 Washington, however, did not produce any evidence in support of these allegations at the postconviction hearing. Accordingly, the record clearly establishes that Washington was not entitled to relief on those claims, and thus, any error by the postconviction court in not making findings concerning such claims was harmless. *Id.*

### IV. Conclusion

¶ 51 For these reasons, the order is affirmed.

JUDGE HAWTHORNE and JUDGE LICHTENSTEIN concur.