22CA0849 Peo v Parra 10-24-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0849
City and County of Denver District Court No. 09CR2290
Honorable Lisa C. Arnolds, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Christopher Dewayne Parra,

Defendant-Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Yun and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Assistant Solicitor
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Meredith K. Rose, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Defendant, Christopher Dewayne Parra, appeals the summary denial of his Crim. P. 35(c) motion alleging ineffective assistance of counsel. We affirm.

## I.    Background

¶ 2    At about 4:00 a.m. on Christmas morning 1998, C.C. called 911 to report that she had just been attacked in her apartment by an unknown assailant. She told the responding officers that the man had tied her hands with a shoelace and repeatedly sexually assaulted her at knifepoint.

¶ 3    During the assault, the assailant used a condom that lodged near the victim's cervix. The condom was recovered a few hours later during the victim's sexual assault examination.

¶ 4    Ten years later, the police matched DNA from the condom to Parra, who, in 1998, lived in the same apartment building as the victim. Parra was arrested. During a recorded police interview, Parra denied that he and the victim had ever had consensual sex.

¶ 5    At trial, having learned of the DNA evidence, Parra's theory of defense was that he had consensual sex with the victim on Christmas eve. Then, because her boyfriend was arriving within a

few hours and she could not dislodge Parra's condom, the victim falsely reported a rape to explain why she had to have another man's condom removed from her vagina.

¶ 6    To counter Parra's consent defense, the prosecution presented evidence under CRE 404(b) of two prior sexual assaults.

¶ 7    According to the evidence, in 1996, Parra entered J.R.'s bedroom in the middle of the night and raped her at knifepoint. She was eventually able to grab a gun from under the bed and, when it jammed, she hit Parra in the head and escaped.  Parra was arrested at the scene.  He claimed that he and J.R. had consensual sex.  A jury could not reach a verdict on the sexual assault charge, and Parra later entered no contest pleas to assault with a weapon and indecent exposure.

¶ 8    In 2000, Parra climbed through a window into A.E.'s apartment in the middle of the night, entered her bedroom armed with a knife, and started kissing her mouth and licking her thighs. A.E. screamed, awakening her boyfriend, who restrained Parra until police arrived.  Parra, who lived in the same apartment building as A.E., claimed that he had accidentally wandered into the wrong

apartment, had fallen asleep on the bedroom floor, and was awakened by the victim's screams. A jury convicted him of first degree burglary and sexual assault.

¶ 9    The jury in this case rejected Parra's consent defense and found him guilty of three counts of sexual assault and one count of second degree kidnapping. The court designated Parra a sexually violent predator and imposed the maximum authorized sentence.

¶ 10    On direct appeal, Parra argued that the trial court erred by admitting the CRE 404(b) evidence of prior sexual assaults and that the volume of evidence was particularly prejudicial. The division disagreed, concluded that all the prior act evidence was properly admitted, and affirmed the convictions. *See People v. Parra*, (Colo. App. No. 10CA1475, Mar. 26, 2015) (not published pursuant to C.A.R. 35(f)) (*Parra I*). The supreme court denied certiorari and the mandate issued on May 19, 2016.

¶ 11    On September 18, 2019, Parra filed a pro se Crim. P. 35(c)

motion.[1]  The motion asserted that trial counsel had provided

ineffective assistance[2] by

- failing to exclude the CRE 404(b) evidence or to effectively

  challenge the CRE 404(b) witnesses' testimony at trial;

- unreasonably advising Parra not to testify and failing to

  prepare him to testify;

- failing to spend adequate time conferring with Parra before

  trial;

- failing to pursue meritorious defenses;

- failing to present expert testimony on various issues;

---

[1] The postconviction court recognized that Parra's motion was
untimely.  *See* § 16-5-402(1), C.R.S. 2024 (postconviction motion
must be filed within three years of the date the conviction becomes
final).  But the court determined that Parra might have been able to
establish justifiable excuse or excusable neglect for the delay, *see*
§ 16-5-402(2)(d), based on appellate counsel's alleged incorrect
advice about the deadline for filing the postconviction motion.  The
postconviction court declined to hold a hearing on the timeliness
issue, however, because it concluded that Parra's claims failed on
the merits.  We agree with the court's merits analysis, so we also
decline to reach the timeliness question.

[2] Parra also raised various claims of trial court errors, which the
postconviction court denied as successive because those claims
could have been raised on direct appeal.  *See* Crim. P. 35(c)(3)(VII).

4

- failing to effectively cross-examine certain witnesses; and

- failing to investigate and present mitigating evidence of Parra's mental health at sentencing.[3]

Parra also asserted a cumulative error claim.

¶ 12    Parra's appointed counsel later filed a supplemental motion, reasserting four of Parra's pro se claims:

1. counsel was ineffective in her "handling" of the CRE 404(b) issues "both prior to, and at the time of, trial";

2. counsel provided ineffective assistance by failing to prepare Parra to testify and by improperly advising him not to testify;

3. counsel failed to communicate sufficiently with Parra before trial, which led to her ineffective handling of the CRE 404(b) issues and her unreasonable advice to Parra about testifying; and

---

[3] In his pro se motion, Parra alleged that his lawyer should have introduced evidence of his mental health condition *at trial* as well, but that part of his ineffective assistance of counsel claim has been abandoned on appeal.

4. counsel's cumulative errors deprived Parra of the effective assistance of counsel.

¶ 13    In an exceptionally thorough and well-reasoned order, the postconviction court addressed and rejected each of Parra's claims, including claims raised in the pro se motion and not reasserted in the supplemental motion.

¶ 14    Parra now appeals.

## II.    Legal Principles and Standard of Review

¶ 15    A criminal defendant has a constitutional right to the effective assistance of counsel. *People v. Rainey*, 2023 CO 14, ¶ 1.  To prevail on an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶ 16    In assessing the first prong of the *Strickland* test, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound

6

trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)); *see also Le v. Mullin,* 311 F.3d 1002, 1025 (10th Cir. 2002) ("For counsel's performance to be constitutionally ineffective, it must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'") (citation omitted).

¶ 17 To establish prejudice under the second prong of the test, the defendant must demonstrate "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[4]

¶ 18    "Because a defendant must show both deficient performance and prejudice, a court may resolve the claim solely on the basis that the defendant has failed in either regard." *People v. Karpierz*, 165 P.3d 753, 759 (Colo. App. 2006).

¶ 19    A postconviction court may deny a Rule 35(c) motion without an evidentiary hearing if the motion "fails to state adequate factual or legal grounds for relief," Crim. P. 35(c)(3)(IV); the factual

---

[4] Parra argues at various points in his briefing that the postconviction court assessed his claims under an incorrect prejudice standard. He points to instances in which the court stated, with respect to a certain claim, that Parra "could not show" that absent the alleged errors, the outcome "would have" been different. Parra says the court's language indicates that it required him to show *that* the outcome would have been different, whereas, under the correct standard, he only had to show a *reasonable probability* of a different outcome. We disagree that the court's occasional shorthand demonstrates that it applied the wrong standard. At the beginning of its order, it precisely articulated the standard and repeated the "reasonable probability" language later in its analysis. *See People v. Washington*, 2014 COA 41, ¶¶ 28-29 (defendant failed to show that court applied the incorrect prejudice standard where court articulated correct standard in its order). In any event, we review the court's order, including its conclusions regarding prejudice, de novo. *See People v. Delgado*, 2019 COA 55, ¶ 6.

allegations, even if true, do not warrant relief; the claims raise only issues of law; or the record directly refutes the allegations. *People v. Castillo*, 2022 COA 20, ¶ 14.

¶ 20     We review the summary denial of a Rule 35(c) motion de novo. *People v. Cali*, 2020 CO 20, ¶ 14.

### III.     Claims Asserted in the Supplemental Motion

¶ 21     We first address Parra's claims that counsel provided ineffective assistance with respect to the CRE 404(b) evidence and Parra's right to testify.

### A.     CRE 404(b) Evidence

¶ 22     Any claim that trial counsel was ineffective because she failed to prevent the admission of the CRE 404(b) evidence is foreclosed by the *Parra I* division's conclusion that all the evidence was admissible. *See, e.g., People v. Washington*, 2014 COA 41, ¶ 40 (no prejudice from counsel's failure to object to the admission of CRE 404(b) evidence where the appellate court held that the evidence was admissible); *see also Williams v. Trammell*, 782 F.3d 1184, 1198 (10th Cir. 2015) ("[W]hen a defendant fails to show that a trial court's admission of evidence was improper for some reason, it likely follows that the lawyer did not perform deficiently by failing to

object to its admission."); *Garrett v. United States*, 78 F.3d 1296, 1302 (8th Cir. 1996) ("The performance of an attorney is not deficient because the attorney failed to object to admissible evidence.").[5]

¶ 23     Thus, Parra cannot demonstrate that counsel provided ineffective assistance by (1) failing to consult with Parra's lawyers in the 2000 case about ways to exclude the CRE 404(b) evidence in this case; (2) failing to "challenge[] the underlying facts of these incidents" at the motions hearing; (3) failing to collaterally attack the 2000 conviction;[6] and (4) failing to object to the amount of CRE 404(b) evidence.[7]

---

[5] In this case, trial counsel did object, repeatedly, to the admission of the CRE 404(b) evidence.  But under well-established law, even if she had not objected, we could not say that she provided ineffective assistance.

[6] This claim fails for the independent reason that Parra did not identify any grounds on which the 2000 conviction could have been collaterally attacked in 2009 by his lawyer in this case.

[7] This claim fails for the independent reason that counsel *did* object to the volume of evidence and requested a mistrial; the objection was overruled and the request for a mistrial denied.

¶ 24　　That brings us to Parra's complaints about his lawyer's performance at trial concerning the prior act evidence. In our view, trial counsel had two options: she could try to persuade the jury that Parra had not assaulted J.R. and A.E., by relitigating the facts of the cases and attempting to impeach all nine CRE 404(b) witnesses, or she could try to persuade the jury that the prior conduct was irrelevant to whether Parra had consensual sex with C.C. by emphasizing the dissimilarities between the prior acts and the current offense. Trial counsel chose the second approach.

¶ 25　　On appeal, Parra argues that his lawyer was ineffective for not choosing the first approach. Specifically, he says counsel should have impeached the victims' testimony in the prior sexual assault cases and challenged the testimony of an officer involved in the 2000 case.

¶ 26　　As noted, though, Parra must overcome a strong presumption that counsel's conduct was reasonable, because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . , and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that

11

a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Therefore, in applying the presumption, we are "required not simply to give [the] attorney[] the benefit of the doubt, but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [she] did." *People v. Luong*, 2016 COA 13M, ¶ 20 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011)); *see also United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999) (determining, without an evidentiary hearing, that defendant had not overcome presumption of effective assistance because the court could "conceive of numerous reasonable strategic motives" for counsel's actions at trial).

¶ 27 We cannot say that counsel's strategy with respect to the CRE 404(b) evidence was objectively unreasonable. Indeed, Parra does not allege any facts showing that counsel's strategy was unreasonable; he simply points to an available alternative strategy. But the mere existence of a second potentially reasonable strategy does not render counsel's strategy per se unreasonable and does not overcome the presumption. *See Johnson v. Comm'r of Corr.*,

140 A.3d 1087, 1112 (Conn. App. Ct. 2016) ("The fact that [counsel's chosen strategy] was not the only reasonable trial strategy that was available to counsel, or that it ultimately was not successful, is not dispositive of the issue of whether the strategy employed was objectively reasonable."), *aff'd*, 198 A.3d 52 (Conn. 2019).  To be entitled to an evidentiary hearing, Parra had to explain why "there was no conceivable tactical justification for counsel's strategy," *id.* at 1108, not just explain why he thought his strategy was better.

¶ 28     And Parra's preferred strategy had its own fundamental flaws. So even if we assume that relitigating the prior sexual assaults is a reasonable strategy, Parra cannot establish that his lawyer provided ineffective assistance.

¶ 29     Take, for example, his complaint that counsel was ineffective for failing to challenge the officer's testimony suggesting that Parra entered A.E.'s apartment through a window, not through the front door as Parra claimed.  According to Parra, the officer "theorized that a latex glove found near the window was left by the intruder" when, in fact, police reports allegedly established that the glove

13

belonged to A.E.'s daughter. But the officer never testified that the glove likely belonged to the intruder.[8] So counsel could not have provided ineffective assistance by failing to challenge the officer's "theory" about the glove. Nor was counsel ineffective for failing to challenge the officer's basis for opining that Parra's lug soled shoes matched a print outside A.E.'s window. Parra suggests that the officer, who testified as a lay witness, gave expert testimony, but that is incorrect. *See People v. Vigil*, 2015 COA 88M, ¶¶ 61-64, *aff'd*, 2019 CO 105. And although he contends that counsel should have "cross-examined [the officer] about this alleged match," he does not say what cross-examination would have revealed. *See People v. Osorio*, 170 P.3d 796, 800-01 (Colo. App. 2007).

¶ 30      Likewise, Parra fails to explain how counsel could have "impeached" A.E.'s testimony that Parra had kissed her and licked her thighs as her boyfriend was sleeping next to her. *See id.* As for

---

[8] The officer testified that the window screen had been tampered with and noted, in describing a photograph, that "there's a rubber latex glove laying on the windowsill." Then, in response to the question, "[D]id you notice anything else around the daughter's window," he responded, "Like I said, just the window screen. It looked like it had been punched out and hastily put into place[,] and then the rubber glove."

14

the DNA evidence, counsel elicited testimony from a DNA analyst that Parra was excluded as a contributor to all the saliva samples collected from A.E. To the extent Parra contends that counsel was ineffective for failing to call an expert to testify that the absence of DNA evidence in the case was "impossible" to reconcile with A.E.'s testimony, we reject that contention. The postconviction court concluded that Parra had to identify an expert who would offer such an opinion, and we agree, particularly because the analyst did not find the absence of Parra's DNA significant. *See People v. Terry*, 2019 COA 9, ¶ 27 (no cognizable ineffective assistance of counsel claim based on failure to call an expert where the defendant did not "identify expert testimony" that would have rebutted the prosecution expert's opinion); *see also Winters v. State*, 2019 WY 76, ¶ 62 ("When an ineffective assistance claim is based upon the failure to call an expert witness, the defendant must show an expert was available who would have testified consistently with his theory.") (citation omitted). And if the argument is that counsel should have introduced evidence that A.E.'s DNA was also not found on Parra's hands, that evidence would have been cumulative

15

of the evidence that no DNA linked Parra to A.E.  *See Washington,* ¶ 35 (counsel is not ineffective for failing to introduce cumulative evidence).

¶ 31        Finally, counsel's failure to impeach J.R. with trivial inconsistencies between her testimony in the 1996 case and her testimony at this trial did not amount to ineffective assistance.[9] *See United States v. Harris,* 394 F.3d 543, 556 (7th Cir. 2005) (failure to impeach a witness on "trivial matters" does not constitute ineffective assistance of counsel); *Johnson v. United States,* 860 F. Supp. 2d 663, 817 (N.D. Iowa 2012) (A defendant "cannot show prejudice from failure to impeach a witness where the

---

[9] On appeal, Parra does not specify any inconsistencies, but instead directs us to his supplemental motion.  The motion sets forth six inconsistencies between J.R.'s 1996 preliminary hearing testimony and her 2010 testimony in this case, including (1) in 1996, she said that before the assault, she was at The Drink with her roommate and two others, but in 2010, she said she thought the name of the bar was the Sunset Grill and she was there with her roommate and one other person; (2) in 1996, she said she spent about two hours at the bar, but in 2010, she said she spent "maybe an hour and a half" there; and (3) in 1996, when asked how long Parra had his fingers inserted in her vagina, she said she "couldn't say for sure," but that "to [her], it seemed like a long time" whereas in 2010, she said his fingers were in her vagina for "probably a minute," but it "was hard to say because "time seems like it's running really fast and really slow at the same time."

16

inconsistencies in a witness's pretrial statements and trial testimony are 'very slight,' because the likelihood of a different result must be considered in light of the evidence as a whole.").

¶ 32     For these reasons, we agree with the postconviction court that Parra was not entitled to a hearing on any of these ineffective assistance of counsel claims relating to the CRE 404(b) evidence.

### B.     Advice Regarding the Right to Testify

¶ 33     A defendant has a constitutional right to testify in his own defense, U.S. Const. Amend. 5; Colo. Const. art. 2, § 25, and counsel has a duty to adequately advise the defendant about his right to testify, *People v. Naranjo*, 840 P.2d 319, 323 (Colo. 1992).

¶ 34     Parra contends that counsel unreasonably advised him not to testify and then failed to prepare him to do so.  As a result, he says, he felt compelled to waive his right to testify.

¶ 35     But here, too, Parra cannot overcome the presumption that counsel's action might be considered sound trial strategy. Counsel's advice not to testify is presumptively reasonable unless Parra can show that "no competent counsel would have taken the action that his counsel did take." *Putman v. Head*, 268 F.3d 1223,

1244 (11th Cir. 2001) (citation omitted).  Parra insists that the advice was unreasonable because testifying was his only opportunity to rebut the CRE 404(b) evidence and substantiate his consent defense, and his testimony could do no more damage than the CRE 404(b) evidence had already done.  According to Parra, any reasonably competent lawyer would have advised him to testify "in this she said/he said case."

¶ 36     Counsel's strategy, though, was *not* to rebut the CRE 404(b) evidence, but instead to try to convince the jury that it was irrelevant to the current charges.  So Parra's blow-by-blow rebuttal of every CRE 404(b) witness's testimony (as outlined in his pro se motion) would have undercut, rather than supported, counsel's strategy, and it would have turned a "she said/he said" case into a "she said and she said and she said/he said" case — the exact result counsel was trying to avoid.  And counsel could reasonably have concluded that Parra could not effectively substantiate his consent defense in light of the interview in which he denied having had consensual sex with the victim.  Finally, it is not true that the CRE 404(b) evidence had doomed Parra so entirely that he could

18

not have done worse by testifying: the jury acquitted him of three counts of sexual assault. Because, given all this, we can conceive of an obvious reason "counsel . . . proceed[ed] as [she] did," Parra cannot overcome the presumption that counsel's advice was reasonable. *Luong*, ¶ 20.

¶ 37 Moreover, Parra knew, because the trial court told him, that the decision to testify was his alone and that he had the right to testify even if his lawyer had given him contrary advice. *See Jackson v. United States*, 956 F.3d 1001, 1007-08 (8th Cir. 2020) (counsel was not ineffective for advising the defendant not to testify where advice was based on a strategy of avoiding cross-examination and the defendant "certainly knew he could testify").

¶ 38 Still, Parra says he felt compelled to go along with his lawyer because he was unprepared to testify. As an initial matter, we agree with the postconviction court that Parra's response to the court's *Curtis* advisement[10] belies this argument. Though a valid *Curtis* advisement will not foreclose every claim concerning the defendant's right to testify, *see Moore v. People*, 2014 CO 8, ¶ 24,

---

[10] *See People v. Curtis*, 681 P.2d 504 (Colo. 1984).

19

we think it does here. Parra's argument is essentially that he did not waive his right to testify voluntarily but only under compulsion, because he believed he could not effectively exercise the right. During the *Curtis* advisement, however, Parra told the court that his decision not to testify was a "voluntary decision," not made "as a result of pressure or influence or coercion by anybody." In other words, the record refutes this claim.

¶ 39    Regardless, the claim is conclusory. A mere allegation that counsel failed to prepare him to testify is insufficient. Parra must demonstrate prejudice, by explaining how, with some preparation, his decision about testifying would have been different. *See, e.g.*, *United States v. Cooper*, 594 F. App'x 509, 515 (10th Cir. 2014) (unpublished opinion) (on a claim that counsel failed to prepare a defendant to testify, the defendant must establish prejudice). But Parra does not explain what preparation was necessary for him to elect to testify about his own version of what transpired on Christmas eve (and in 1996 and 2000). To the extent he argues that preparation was necessary to help him withstand the "eviscerat[ing]" cross-examination that counsel warned him about,

that argument merely confirms that counsel had a good reason to advise him not to testify.

¶ 40    In sum, we conclude that the postconviction court properly denied without a hearing Parra's claims that counsel provided ineffective assistance with respect to his right to testify.

### IV. Claims Raised in the Pro Se Motion and Addressed by the Postconviction Court

¶ 41    The postconviction court elected to address the ineffective assistance of counsel claims raised in Parra's pro se motion but not reasserted in the supplemental motion. Accordingly, we consider those claims preserved for our review. *See, e.g.*, *No on EE v. Beall*, 2024 COA 79, ¶ 13 (generally, an issue is preserved for appeal if the district court ruled on it).

### A. Failure to Pursue Meritorious Defenses

#### 1. Alibi Defense

¶ 42    Parra says that counsel provided ineffective assistance because she failed to call witnesses who would have established that Parra was at his mother's house in the middle of the night on Christmas eve 1998, and therefore not at C.C.'s apartment when the assault occurred. Of course, an alibi defense is inconsistent

21

with a consent defense, and because of the DNA evidence, Parra was limited to a consent defense. Still, he says that he could have used the alibi witnesses to prove that he had sex with the victim earlier on Christmas eve — before he arrived at his mother's house that evening for a party. The alternate timeline, in turn, would have undermined the victim's credibility.

¶ 43    The postconviction court rejected the argument because Parra's brother, a reluctant prosecution witness, testified that Parra was likely at his mother's house at the time C.C. reported being raped, so additional testimony that Parra was at his mother's house would have been cumulative.

¶ 44    On appeal, Parra insists that the brother's testimony was equivocal, and that Parra's mother could have more effectively established the alternate timeline.

¶ 45    We agree with the postconviction court that the mother's testimony, even if less equivocal, would have been cumulative of the brother's testimony. *See, e.g., Daniel v. State*, 86 So. 3d 405, 429-30 (Ala. Crim. App. 2011) ("[E]ven if alternate witnesses could provide more detailed testimony, trial counsel is not ineffective for

22

failing to present cumulative evidence.") (citation omitted).

Additionally, a theory that the consensual sex occurred earlier in the day — as early as 4:00 p.m., according to Parra — would have undercut Parra's consent defense. That defense depended on the victim's concern that her boyfriend was about to arrive at her apartment and would discover the lodged condom. But if consensual sex occurred at 4:00 p.m., the victim had more than twelve hours before her boyfriend was scheduled to arrive to go to an emergency room and have the condom removed. As the prosecutor noted in closing argument, under those circumstances, the victim did not have the motive to falsely report a rape that Parra had ascribed to her. Therefore, trial counsel had a strategic reason not to set a precise timeline and instead to argue more generally that the brother's testimony called into question the credibility of the victim's account, which is exactly what counsel did. "Once counsel reasonably selects a defense, it is not deficient performance to fail to pursue alternative defenses," *Rios v. Rocha*, 299 F.3d 796, 807 (9th Cir. 2002), particularly when, as here, the alternative

strategy would have conflicted with the chosen strategy, *see*

*Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998).

### 2. Rape Shield

¶ 46    Parra contends that his lawyer was ineffective for failing to pierce the rape shield so that he could present evidence that the victim "was into 'the hookup culture' and traded sex with Parra for cocaine, despite having a boyfriend."

¶ 47    That claim fails for at least two reasons. First, as Parra acknowledges, counsel did file a motion to pierce the rape shield, which the trial court denied. Second, Parra does not even suggest a legal theory under which evidence that the victim traded sex for drugs would be admissible under the rape shield statute, particularly in a case where it is undisputed that the defendant and victim had sex. *See* § 18-3-407(1)(a)-(b), C.R.S. 2010; *see also* Crim. P. 35(c)(3)(IV) (postconviction motion must "state adequate . . . legal grounds for relief").

### 3. Suppression of a Taped Interview

¶ 48    During trial, defense counsel discovered that police had recorded an interview of Parra in 1996, after he was arrested for sexually assaulting J.R. Because the recording of the interview was

24

not turned over, counsel moved to suppress Parra's statements to police.  After a hearing, the trial court denied the motion.

¶ 49     On appeal, Parra argues that counsel provided ineffective assistance by not filing the suppression motion earlier.  That claim fails because he does not explain why the timing of the motion matters or allege that suppression of the statements would probably have resulted in a different verdict.  *See People v. Vicente-Sontay*, 2014 COA 175, ¶ 23 (When a defendant alleges ineffective assistance of counsel based on a failure to litigate a suppression issue, "the defendant must prove that the suppression claim was 'meritorious' and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.").

### B.     Failure to Call Expert Witnesses

#### 1.     "Hookup Culture" Expert

¶ 50     Parra contends that his lawyer was ineffective for failing to present expert testimony that in 1998, young people sometimes engaged in casual sex.  He says the testimony was necessary to explain "his relationships" with J.R. and C.C.

¶ 51     For a few reasons, we disagree.  First, while Parra attached some articles about "hookup culture" to his motion, he did not

25

identify anyone purporting to be an expert in that field. Second, in 2010, the fact that people sometimes have sex outside of a committed relationship would not have been a concept so unfamiliar to an ordinary juror that it would have been the proper subject of expert testimony. *See Venalonzo v. People*, 2017 CO 9, ¶ 22 (explaining that expert testimony "is that which goes beyond the realm of common experience and requires experience, skills, or knowledge that the ordinary person would not have"); *see also People v. Newmiller*, 2014 COA 84, ¶¶ 58-60 (affirming trial court's determination that the "[f]ailure to call an expert on a matter more properly the subject of lay testimony is not ineffective assistance of counsel"). Third, the expert could not have testified about whether the victims participated in "hookup culture," so the testimony would not, in fact, have helped the jury understand Parra's purported "relationships" with the victims.

## 2.    False Memories Expert

¶ 52    At trial, the doctor who had conducted the sexual assault examination of the victim in 1998 testified that he recalled seeing "linear, red, deep abrasions" that covered "270 degrees of [the

26

victim's] wrist," "almost like . . . a rope burn."  On cross-examination, the doctor confirmed that his report described "red marks" and "abrasions" on the victim's wrists, but it did not describe the marks as covering 270 degrees of her wrists or looking like a "burn."

¶ 53    Parra argues that counsel was ineffective for failing to call an expert on "false and enhanced memories" to impeach the doctor's testimony about the injuries he observed.[11]  But there was no evidence that the doctor's memory was false or enhanced.  He explained that he had an independent recollection of the examination because it was the only "sexual assault case [he had] ever done where [he] removed a condom, and that stood out to [him]," as did the wrist injuries, which he had not seen in "any other case."  *See Gilbert v. Paramo*, 754 F. App'x 611, 612 (9th Cir. 2019) (unpublished opinion) (counsel was not ineffective for failing

---

[11] Parra also says that counsel could have "more effectively" cross-examined the doctor about his failure to take notes during the victim's examination (he did take notes, which documented the injuries to C.C.'s wrists) and his failure to order a toxicology report (Officer Michael Maloney testified that he ordered a toxicology report).  Parra cannot show any prejudice from these alleged deficiencies.

to call an expert on false memories to impeach the sexual assault victim's testimony because the "failure to call an expert is not deficient where there is no evidence to support a defense").

## V. Cumulative Error

¶ 54 Parra contends that the cumulative effect of the alleged errors prejudiced him. Even assuming the cumulative error doctrine applies to ineffective assistance of counsel claims, *but see People v. Rivas*, 77 P.3d 882, 893 (Colo. App. 2003) (cumulative error doctrine applies when the "trial court commit[s] numerous errors"), we need not conduct a cumulative error analysis because we have concluded that none of Parra's claims warrant an evidentiary hearing. *See Howard-Walker v. People*, 2019 CO 69, ¶ 25 ("For reversal to occur based on cumulative error, a reviewing court must identify multiple errors that collectively prejudice the substantial rights of the defendant, even if any single error does not.").[12]

---

[12] For this reason, we reject Parra's claim that counsel provided ineffective assistance by not spending enough time conferring with him about the case. Parra cannot show prejudice because the allegedly inadequate conferral time did not result in any deficient performance by counsel that prejudiced his defense.

## VI.   Sentencing

¶ 55   At sentencing, Parra was represented by a different lawyer. According to Parra, the second lawyer met with him for about thirty minutes before the sentencing hearing.

¶ 56   Parra contends that the second lawyer provided ineffective assistance by failing to present evidence of his self-diagnosed post-traumatic stress disorder (PTSD), which he says resulted from his Army service in the mid-1990s, during which he completed a six-month stint in Haiti, and which he says may have been exacerbated by antimalarial medication he took at that time.  He says the second lawyer should also have presented evidence that around the time of the offense, he was "self-medicating" through "heavy drinking, occasional cocaine use, and sexual addiction behavior."

¶ 57   But Parra never alleges that he told either of his lawyers that he had PTSD and, in his briefing on appeal, he concedes that neither of them "had [any] notion" that he "had been adversely affected by his [military] service."

¶ 58   The reasonableness of counsel's decision to forgo making an argument is "directly related to the information the defendant has

29

supplied." *People v. Rodriguez*, 914 P.2d 230, 295 (Colo. 1996) (citation omitted); *see also Strickland*, 466 U.S. at 690-91 (explaining that counsel's decision whether to undertake a particular line of investigation is generally based on the facts of the case and information supplied by the defendant). The second lawyer's failure to present evidence that Parra suffered from PTSD cannot constitute ineffective assistance "when the essential and foundational information required to trigger" an investigation into his mental health was "withheld from [the second lawyer] by [Parra] himself." *Rodriguez*, 914 P.2d at 295 (citation omitted).

¶ 59 On appeal, Parra suggests that the second lawyer did not learn about the PTSD because the lawyer spent insufficient time with him. But Parra does not explain why he could not have told his second lawyer that he had PTSD at some point during a thirty-minute visit.

¶ 60 In any event, a defendant alleging ineffective assistance of counsel at sentencing must show a reasonable probability that, but for counsel's deficient performance, the result of the sentencing proceeding would have been different. *See People v. Dunlap*, 124

30

P.3d 780, 797 (Colo. App. 2004). "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693).

¶ 61     In his 2019 pro se motion, Parra alleged that he developed PTSD in the mid-1990s. He did not allege any side effects from the antimalarial medication other than that it "exacerbated" his PTSD.[13] Parra did not allege that he had ever been diagnosed with PTSD or any other mental health disorder. Parra did not submit an evaluation or other report from a mental health professional opining that he suffered from a mental health disorder at the time of the offense. He did not identify any mental health professional who he intended to call at a hearing to testify about his mental health in 1998. And although he faulted his second lawyer for not investigating mitigating mental health evidence, he did not allege that an investigation would have uncovered any useful evidence,

---

[13] In support of his allegations, Parra attached to his motion an article discussing the side effects of Lariam. The article does not say that Lariam "exacerbates" PTSD; it says that Lariam can produce symptoms similar to PTSD.

much less identify what evidence it would have uncovered. *See People v. Sharp*, 2019 COA 133, ¶ 15 (to assert a failure to investigate claim, a defendant must allege that the investigation would have uncovered evidence that might reasonably have resulted in a different outcome); *People v. Chambers*, 900 P.2d 1249, 1252 (Colo. App. 1994) ("Unless [an] investigation would have discovered substantial evidence which, if introduced, might reasonably have led to a different result, counsel's deficiency . . . was not prejudicial.").

¶ 62     The postconviction court accepted as true that Parra had PTSD from his time in Haiti, and that he self-medicated by drinking heavily, using illegal drugs, and engaging in "sexual addiction behavior." But in light of all the evidence, the court found that there was no reasonable probability that this information would have had "any substantial impact" at sentencing.

¶ 63     On appeal, Parra says only that the court's conclusion is "speculative." We do not agree.

¶ 64     At the sentencing hearing, the court said that "the facts of this case are extraordinarily aggravated," and that this was "one of the

32

most aggravated cases of sexual assault th[e] [c]ourt ha[d] ever heard." It found that Parra was "clearly a serial rapist" and "clearly qualif[ied] as a sexually violent predator." The court told Parra, "you are one of the most dangerous people I have known in my career." It found Parra to be a "clear and present danger to anyone, any female, in [the] community." For that reason, it explained, "for th[e] [c]ourt to do anything but ensure that you serve as long as you possibly can serve in prison" would be "a dereliction of my duty." According to the court, it wanted to impose "the most severe sanction [it could]."

¶ 65 We conclude that Parra has failed to show there is a reasonable probability that, but for counsel's failure to present evidence of Parra's self-diagnosed PTSD and his addictive behaviors, the result of the sentencing hearing would have been different. Accordingly, we agree with the postconviction court that Parra was not entitled to a hearing on this claim. *Cf. People v. Torrez*, 2013 COA 37, ¶ 92 (reversing the defendant's sentence but declining to remand for resentencing where the trial court "clearly and unequivocally stated that it intended to impose the maximum

sentence," and instead correcting the sentence on appeal to achieve the maximum possible lawful sentence); *see also Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003) (denial of a postconviction motion without a hearing is justified if the existing record establishes that the defendant's factual allegations, even if proved true, would fail to demonstrate prejudice).

## VII. Disposition

¶ 66    The order is affirmed.

JUDGE YUN and JUDGE BERGER concur.